# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

**Defense Distributed, et. al,**

**Plaintiffs-Appellees,**

**v.**

**No. 26-11420-DD**

**John Elik, Alexander Holladay,**
**Josh Stroke, John Lettman, and**
**MAF Corp.,**

**Defendants-Appellants.**

_____

## APPEAL OF A CIVIL CASE FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA DISTRICT COURT CASE NO. 6:24-CV-01629-AGM-LHP

## INITIAL BRIEF OF APPELLANTS

Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
_Counsel for Appellants_

*Defense Distributed, et. al. v. Elik, et. al.*, Appeal No. 26-11420

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to 11th Cir. R. 26.1-1(a), Appellants file this Certificate of Interested Persons and Corporate Disclosure Statement. The following are all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party known to the undersigned.

1. Berger, Wendy: United States District Judge

2. DD Foundation LLC: Subsidiary of Appellee Defense Distributed

3. Defcad, Inc.: Subsidiary of Appellee Defense Distributed

4. De Pury, Gary Charles: Attorney for Holladay and MAF Corp below

5. Elik, John: Appellant

6. Flores, Chad: Attorney for Appellees Below

7. Gaylord-Moe, Anne-Leigh: United States District Judge

8. Gingras, David: Attorney for Appellees Below

i

9. Gyebi, Amaris: Attorney for Appellees Below

10. Holladay, Alexander: Appellant

11. Hoffman-Price, Leslie: Magistrate Judge

12. Larosiere, Matthew: Attorney for Appellants

13. Lettman, John: Appellant

14. Leitner, Leia: Attorney for Appellees Below

15. MAF Corp.: Appellant

16. Reynal, Federico: Attorney for Appellees Below

17. Stroke, Josh: Appellant

18. Wilson Elser Moskowitz Edelman & Dicker: Appellee's law firm

19. Wilson, Cody Rutledge: Owner of Appellee Entity

20. Zermay, Zachary: Attorney for non-appealing Counterdefendant below.

No publicly traded company or corporation has an interest in the outcome of this appeal to the undersigned's knowledge.

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument on this appeal. Counsel believes oral argument will be beneficial to this honorable Court in its resolution of the case, particularly given the complexity, uniquity, and importance of the issues raised. This appeal presents an unusual procedural posture: former counterdefendants and third-party defendants filed a sanctions motion supported by record materials and requested an evidentiary hearing; the magistrate judge denied relief without addressing the hearing request and in substantial part because there had been no merits rulings; Appellants timely objected under Rule 72(a); and the district court later terminated the objection without deciding it when it dismissed the remaining claims between other parties. Oral argument would assist the Court in addressing the interaction between Rule 72(a), 28 U.S.C. § 1927, and sanctions as a collateral matter.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP) ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS ...........................................................................iv

TABLE OF AUTHORITIES.....................................................................vii

STATEMENT OF JURISDICTION.........................................................viii

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE ..................................................................2

(i)    Course of Proceedings and Disposition in the Court Below.........2

(ii)    Statement of the Facts.....................................................................4

(iii)    Standards of Review .......................................................................7

SUMMARY OF THE ARGUMENTS.......................................................9

ARGUMENT ...........................................................................................11

I.    THE LOWER COURT ABUSED DISCRETION BY DENYING THE SANCTIONS MOTION WITHOUT AN EVIDENTIARY HEARING.................................................................................................11

a.    Appellants Requested an Evidentiary Hearing.........................12

b.    The sanctions motion turned on factual disputes that could not be resolved by calling the proffer "conjecture."...................................13

c.    The order's rationale shows why a hearing was necessary..................................................................................................15

d.    *Didie*, *Donaldson*, *Amlong*, and *Celsius* support remand. ..................................................................................16

II.    THE MAGISTRATE JUDGE APPLIED THE WRONG LEGAL FRAMEWORK UNDER § 1927. ......................................................18

a.    § 1927 does not require a merits ruling on the underlying claims. ...............................................................19

b.    Voluntary dismissal does not eliminate exposure to collateral sanctions. ..............................................................20

c.    § 1927 does not require a prior discovery ruling. .......................21

d.    The District Court clearly erred in holding that counterclaims cannot multiply proceedings, and in any event, Appellants' theory concerned post-notice litigation conduct, not merely the filing of a pleading. ..............................................................23

e.    The Order's rule would incentivize the conduct § 1927 is designed to deter.............................................................26

III.    APPELLANTS PRESENTED A SUFFICIENT EVIDENTIARY PROFFER TO JUSTIFY FURTHER PROCEEDINGS..........................27

a.    Appellees received early notice of substantial defects. .............28

b.    Defense Distributed and its counsel continued and expanded the challenged allegations after notice...................................29

c.    The "hacking" allegations were particularly unsupportable, and known to be false by counsel. .........................................31

d.    The spoliation and special-master proceedings provided evidence of intentional or reckless multiplication. ...........................32

e.    Voluntary dismissal does not negate the evidentiary proffer....34

IV.    THE RULE 72 PROCEEDINGS CONFIRM PRESERVATION AND SUPPORT REMAND. ................................................34

V.    THE INHERENT-AUTHORITY ISSUE SHOULD BE REMANDED WITH THE § 1927 ISSUE. ..........................................36

v

CONCLUSION ..................................................................................38

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .......................39

CERTIFICATE OF SERVICE..............................................................40

# TABLE OF AUTHORITIES

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, No. 5:04-cv-12-Oc-10GRJ, 2008 WL 906739 (M.D. Fla. Apr. 2, 2008)............................25

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230
(11th Cir. 2007)........................................................ 7, 8, 10, 16, 17, 27

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, No. 22-12687, 2025
WL 2887300 (11th Cir. Oct. 10, 2025)............................... 17, 18, 22, 34

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................36

*Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384 (1990) ...........................20

*Didie v. Howes*, 988 F.2d 1097 (11th Cir. 1993). ...................................16

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) (en banc)....8, 10, 17

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*,
561 F.3d 1298 (11th Cir. 2009)...............................................................7

*Hyde v. Irish*, 962 F.3d 1306 (11th Cir. 2020) ............................ 19, 20, 37

*In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) ...............................................8

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) ..........7

*Lee v. First Lenders Ins. Servs.*, Inc., 236 F.3d 443 (8th Cir. 2001) .......25

*Macort v. Prem, Inc.*, No. 04-15081, 2005 WL 8151794
(11th Cir. Mar. 29, 2005) (unpublished) ..............................................21

*Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010) ....................... 7, 23, 35, 36

*Peterson v. BMI Refractories*, 124 F.3d 1386 (11th Cir. 1997) ...............19

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218
(11th Cir. 2017)..................................................................................7, 37

*Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832 (7th Cir. 2005)...........24

vii

## STATEMENT OF JURISDICTION

The district court had federal-question jurisdiction under 28 U.S.C. § 1331. On January 12, 2026, the magistrate judge denied Appellants' motion for sanctions and related fees. Doc. 184.[1] Appellants timely objected under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A). Doc. 194. On March 31, 2026, the district court entered an order dismissing the case with prejudice, terminating pending motions, and closing the case. Doc. 273. Appellants filed a timely notice of appeal on April 23, 2026. Doc. 277 at 1–2. This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] Record citations are to district-court ECF document numbers and ECF page numbers.

## STATEMENT OF THE ISSUES

I.    Whether the magistrate judge abused discretion and applied an erroneous procedure by denying a § 1927 and inherent-authority sanctions motion without an evidentiary hearing, where the denial rested on contested factual characterizations.

II.   Whether the district court erred in holding that a counterclaim cannot multiply proceedings.

III.  Whether the district court applied a legally erroneous framework by denying relief because there had been no merits ruling on the 109-page RICO counterclaims which brought the 5 appellants into a copyright dispute, instead of asking whether counsel's post-filing conduct objectively and vexatiously multiplied proceedings and caused excess fees.

IV.   Whether, at minimum, the district court's inherent authority required remand for consideration of whether Appellees' counsel used scandalous, unsupported criminal allegations and spoliation rhetoric in bad faith to expand a copyright case into sprawling RICO proceedings.

## STATEMENT OF THE CASE

**(i)    Course of Proceedings and Disposition in the Court Below**

This action began as a simple copyright dispute. Doc. 1. Defense Distributed responded by filing a 109-page answer and counterclaim asserting numerous claims against individuals and entities all across the country, including spoliation rhetoric before any discovery. Doc. 29.

On December 16, 2024, Elik, Stroke, and Lettman moved to dismiss, strike, or for a more definite statement. Doc. 47. Defense Distributed thereafter filed a First Amended Answer with Counterclaims on December 27, 2024. Doc. 49. On January 3, 2025, Defense Distributed filed Second Amended Counterclaims, which became the operative pleading. Doc. 52.

On January 17, 2025, the Counterdefendants and third-party defendants filed a consolidated motion to dismiss the Second Amended Counterclaims. Doc. 71.

Discovery and related motion practice followed. On September 4, 2025, Defense Distributed filed a discovery motion seeking further briefing and an evidentiary hearing concerning alleged spoliation of

2

electronically stored information. Doc. 122. The following day, September 5, 2025, Defense Distributed voluntarily dismissed all counterclaims, crossclaims, and third-party claims without prejudice pursuant to Rule 41(a)(1)(A)(i). Doc. 123 at 2. The district court later recognized the dismissal, dismissed the counterclaims and third-party claims asserted in Doc. 52 without prejudice, denied the consolidated motion to dismiss as moot, and terminated the counter- and third-parties. Doc. 129 at 1.

On September 25, 2025, Appellants and other former Counterdefendants moved for attorneys' fees and expenses under 28 U.S.C. § 1927 and the court's inherent authority. Doc. 138. Appellants requested oral argument and an evidentiary hearing. Doc. 138-9.

On January 12, 2026, the magistrate judge denied the sanctions motion. Doc. 184. The order denied relief without conducting an evidentiary hearing and without addressing the hearing request. Doc. 184. The magistrate judge concluded, among other things, that the court had never ruled on the merits of the counterclaims, that no discovery rulings concerning the dismissed counterclaims and third-party claims appeared on the docket, and that certain spoliation issues were either dismissed, previously denied, or premature. Doc. 184 at 5–9.

3

On January 25, 2026, Appellants filed objections under Rule 72(a). Doc. 194. The district court did not rule on those objections.

On March 30, 2026, Plaintiff Matthew Larosiere and Defendants Cody Wilson, DEFCAD, Inc., Defense Distributed, and Dioskouroi LLC filed a joint notice of settlement. Doc. 270 at 1–2. Appellants were not parties to that settlement. On March 31, 2026, the district court dismissed the case under Local Rule 3.09(b), directed the Clerk to terminate pending motions, and closed the case. Doc. 273. Appellants timely appealed. Doc. 277 at 1–2.

## (ii)    Statement of the Facts

Defense Distributed's original and amended counterclaims alleged that "The Gatalog" and associated individuals engaged in a wide range of unlawful conduct, including racketeering-related activity, wire fraud, extortion, money laundering, threatening murder, obstruction of justice, CFAA violations, Lanham Act violations, tortious interference, trade libel, FDUTPA violations, and spoliation. Doc. 29 at 5–7, 56–93; Doc. 49 at 5–6; Doc. 52 at 4–5, 40–63. The operative pleading also alleged that the copyright dispute was connected to a broader criminal enterprise and

4

referenced allegations concerning the then-recent killing of the UnitedHealthcare CEO. Doc. 49 at 5–6; Doc. 52 at 4–5.

The motions to dismiss filed by Appellants and others challenged personal jurisdiction, the sufficiency of the RICO allegations, the form of the pleadings under Eleventh Circuit shotgun-pleading precedent, and the legal sufficiency of the asserted causes of action. Doc. 47 at 3–20; Doc. 71 at 3–23. Because Defense Distributed voluntarily dismissed its claims, the district court never ruled on the merits of those challenges. Doc. 129 at 1.

In support of sanctions, Appellants contended that Defense Distributed's counsel continued to pursue baseless claims after being put on notice of legal and factual deficiencies. Doc. 138 at 5–23. Appellants further contended that counsel signed and maintained allegations lacking evidentiary support, engaged in discovery conduct designed to increase litigation costs, and pursued spoliation-related proceedings without an adequate factual basis. Doc. 138 at 11–22.

One example identified in the sanctions motion concerned allegations that attorney David Gingras' website had been "hacked." Appellants attached Appellee's own communications which showed a

5

lack of unauthorized computer access and Gingras' own position that someone other than Appellants were responsible for the alleged conduct. Doc. 138 at 14–15; Doc. 150 at 2–4. Gingras disputed Appellants' sanctions arguments. Doc. 141-1.

Another example concerned alleged spoliation of electronically stored information. On September 4, 2025, Defense Distributed represented that disputed technical and preservation issues warranted additional briefing and an evidentiary hearing. Doc. 122 at 2–3. During subsequent discussions, counsel for Defense Distributed admitted they had made no attempts to acquire this information in discovery. Doc. 138-4 at 26:13–18. Counsel for Defense Distributed proceeded with motion practice regardless.

Appellants' sanctions motion argued that these and other events demonstrated bad faith and unreasonable multiplication of proceedings. Doc. 138 at 5–23. The magistrate judge rejected those arguments and denied sanctions. Doc. 184.

**(iii)  <u>Standards of Review</u>**

The denial of sanctions under 28 U.S.C. § 1927 is reviewed for abuse of discretion. *See Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237–38 (11th Cir. 2007).

The denial of sanctions under the district court's inherent authority is likewise reviewed for abuse of discretion. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1222 (11th Cir. 2017); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009).

Whether the district court applied the correct legal standard in resolving a sanctions motion is reviewed *de novo. See Amlong & Amlong*, 500 F.3d at 1238. A district court necessarily abuses its discretion when it applies an incorrect legal standard or relies on clearly erroneous legal premises. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004); *Amlong & Amlong*, 500 F.3d at 1238.

Whether to conduct an evidentiary hearing in connection with a sanctions motion is generally reviewed for abuse of discretion, although

7

any underlying legal determination concerning the necessity of a hearing is reviewed *de novo. See In re Mroz*, 65 F.3d 1567, 1575–76 (11th Cir. 1995) (reviewing sanctions procedures and emphasizing the requirement of adequate notice and opportunity to be heard); *Donaldson v. Clark*, 819 F.2d 1551, 1558–61 (11th Cir. 1987) (en banc) (same); *Amlong & Amlong*, 500 F.3d at 1238 (legal premises underlying sanctions rulings reviewed *de novo*).

## SUMMARY OF THE ARGUMENTS

Following the voluntary dismissal of Appellees' RICO counterclaim, Appellees were repeatedly sanctioned for discovery misconduct below, but Appellants—the third-party defendants to Appellee's 109-page RICO counterclaim—were denied the opportunity to hold Appellees responsible for the excess costs they created. The lower court denied Appellants' sanctions in substantial part because the Court "never ruled" on Appellee's shotgun counterclaims and because "simply filing a pleading—the merits of which were never addressed—cannot alone form the basis for sanctions under § 1927, nor does it warrant sanctions under the Court's inherent authority." (Doc. 184 at 5). The Order then treats the absence of "substantive rulings" as a key distinguishing feature from the cases Movants cited which sanctioned counterclaims under §1927 and inherent authority. (Doc. 184 at 7). This is contrary to law.

Voluntary dismissal may affect the evidence available and the amount recoverable, but it does not make sanctions unavailable. If it did, a party could plead incendiary claims, impose months—or in this case, over a year—of costs, dismiss before the court rules, and then argue

9

sanctions are impossible because no ruling exists. That is antithetical to the purpose of § 1927.

First, the magistrate judge denied a fact-dependent sanctions motion without conducting an evidentiary hearing. That was error in this record. The sanctions motion turned on the conduct of the attorneys, identified disputed facts, and the factual basis for Appellees' allegations. *Didie*, *Donaldson*, and *Amlong* require a meaningful procedure where sanctions turn on disputed facts and credibility.

Second, the sanctions order applied the wrong legal framework. It treated the absence of merits rulings as a prerequisite to §1927 sanctions. But § 1927 asks whether counsel unreasonably and vexatiously multiplied proceedings. *Hyde v. Irish*, 962 F.3d 1306 (11th Cir. 2020) ("These sanctions, like Rule 11 sanctions, do not require a court to rule on the merits of the underlying case."). *Amlong* confirms that § 1927 turns on objective bad faith, including knowingly or recklessly pursuing frivolous claims or needlessly obstructing litigation.

Finally, Appellants submit that this Court should clarify that a counterclaim is not immune from §1927, as counterclaims necessarily complicate litigation.

10

## ARGUMENT

**I.    THE LOWER COURT ABUSED DISCRETION BY DENYING THE SANCTIONS MOTION WITHOUT AN EVIDENTIARY HEARING.**

The order should be vacated and remanded for an evidentiary hearing. The magistrate judge denied sanctions because Appellants supposedly lacked adjudicated proof, citing a lack of ruling on the counterclaims, discovery disputes, and the alleged spoliation issues. But those were reasons to hold the requested evidentiary hearing, not reasons to deny the motion as "pure conjecture." Appellants submitted a record proffer showing Appellee's counsel, on an individual level, had knowledge of the lack of factual basis to their litigation positions, failed to conduct a reasonable pre-suit inquiry, and were attempting intentionally to increase the cost and complexity of the underlying litigation. Yet when Appellants sought sanctions based on counsel's use of those allegations to multiply proceedings, the magistrate judge denied relief without addressing the hearing request.

A district court abuses discretion when it applies the wrong legal standard, follows improper procedures, or bases its decision on clearly

11

erroneous fact findings. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). Each occurred here.

### a. Appellants Requested an Evidentiary Hearing

The sanctions movants filed a request for oral argument and an evidentiary hearing with their sanctions motion. (Doc. 138-9 at 1). The sanctions motion challenged a course of conduct that turned on facts: what counsel knew; whether they investigated; whether they had a factual basis for alleging hacking, criminal allegations, spoliation allegations, allegations of threatened murder, etc; whether they meaningfully conferred before filing motions; and what costs were caused by the challenged conduct. (Doc. 138 at 10–22).

The order denied sanctions on the ground that Appellants' position "rests on pure conjecture" and that the docket reflected no ruling on discovery matters concerning the counterclaims or third-party claims. (Doc. 184 at 7–8). Essentially, the court denied a fact-bound motion because the facts had not been adjudicated, while declining to address the requested procedure for adjudicating them.

### b. The sanctions motion turned on factual disputes that could not be resolved by calling the proffer "conjecture."

The sanctions motion identified record materials bearing on counsel's knowledge, investigation, and post-notice litigation conduct.

One example was the "hacking" allegations. The Second Amended Counterclaims alleged that Lettman hacked counsel David Gingras's website and linked that alleged cyberattack the alleged RICO conspiracy. (Doc. 52 at 38m ¶¶ 128–32). The sanctions record, however, raised substantial questions about the basis for that allegation. Gingras later described a WordPress website that permitted public comments through a blank form, including typed-in names and email addresses. His explanation turned largely on comments appearing with his name or photo, yet he also acknowledged that he knew similar comments may have been possible without anyone knowing his password. (Doc. 141-1 at 3-5, ¶¶ 10–18 & n.1). The very materials Gingras provided showed Gingras himself believed the complained-of comments came from North Carolina (Lettman is a Pennsylvanian) and that it was not a CFAA violation. (Doc. 141-1 at 21-22). Appellants' reply explained why Gingras's own account and the produced materials created a gap between

13

"public comments appeared on a blog" and "Lettman hacked the website at the direction of the alleged enterprise." (Doc. 150 at 2–4). Even still, Gingras signed an amended pleading alleging that his website was "hacked" by Lettman. That was miles from conjecture. It was an attorney-specific factual proffer about the lack of basis for pleading a hacking allegation in a RICO pleading.

The spoliation issue was similar. Defense Distributed injected spoliation rhetoric into its first pleading, before discovery. (Doc. 29 at 92). It later escalated that rhetoric into Rule 37(e) motion practice and a request to appoint a special master. (Doc. 122; Doc. 136). At the meet-and-confer, Appellants asked basic questions: what was allegedly deleted, who prepared the deleted-message report, why the numbers differed, what the source or methodology was, and why the factual basis had not been produced in discovery. (Doc. 138-4 at 18–20, 28–29). Flores declined to respond substantively, vaguely invoking work product and inviting Appellants to oppose; declined to identify the source of the report underlying his allegation; admitted he had not attempted to get the information through the ordinary channels; and, when pressed, stated that he had "conferral fatigue." (Doc. 138-4 at 19–20, 28–29). Again, that

was not conjecture. It was a record proffer that counsel pushed serious spoliation accusations into motion practice without first providing foundational information necessary for meaningful conferral or to provide the requested information at all.

The Rule 72 objection summarized the proffer: Appellants offered a "record-built narrative of vexatious multiplication," including unsupported accusations against unrelated individuals in far-flung locales, boilerplate or misleading discovery responses, refusal to engage in meaningful conferral while demanding expanded briefing, repeated motion cycles, and use of spoliation rhetoric as an escalation lever. (Doc. 194 at 6–7). The court could reject that theory after a hearing, to be sure, but it could not fairly reject it as speculation without addressing the request for one.

### c. The order's rationale shows why a hearing was necessary.

The order did not deny sanctions after finding, on a developed record, that counsel had a factual basis for the challenged conduct. Nor did it find after testimony that counsel's investigation was reasonable, that the hacking allegation had adequate support, that the spoliation motion had a proper factual foundation, or that no excess fees resulted.

15

Instead, the order relied on procedural non-events. It reasoned that the court "never ruled" on the counterclaims; that the merits of the counterclaims "were never addressed"; that no discovery ruling had been entered regarding the counterclaims or third-party claims; and that spoliation issues were dismissed, previously denied, or premature. (Doc. 184 at 5, 7–9).

Those are not reasons to deny a hearing, they are why the hearing was needed. If the court believed the record was underdeveloped, it could have held the hearing, deferred the motion, required targeted evidentiary submissions, or reserved the sanctions issue until related disputes were resolved. What it could not do was deny sanctions for lack of adjudicated findings while refusing to address the procedure requested to develop those findings.

### d. *Didie*, *Donaldson*, *Amlong*, and *Celsius* support remand.

In *Didie v. Howes*, this court reversed and remanded for an evidentiary hearing on sanctions where the parties' factual recitations were "starkly contradictory" and the district court denied sanctions without the factual development needed to resolve them. 988 F.2d 1097, 1105 (11th Cir. 1993). While *Didie* does not mechanically impose a

16

hearing prerequisite, it recognizes the practical limit of paper review where sanctions turn on contested facts and credibility.

Section 1927 turns on counsel's conduct and permits sanctions for objectively reckless litigation behavior. *Amlong & Amlong*, 500 F.3d 1230, 1241–42 (11th Cir. 2007). Where the issue is what counsel knew, what counsel investigated, and whether counsel's conduct was objectively outside the bounds of reasonable advocacy, a court must apply the correct legal standard to a record adequate to support that determination.

*Donaldson v. Clark* is also consistent with Appellant's position. Sanctions procedure is flexible, and a hearing is not required in every case, but flexibility is not permission to deny a fact-bound sanctions motion as unsupported while ignoring a hearing request designed to resolve the factual disputes. 819 F.2d 1551, 1558–61 (11th Cir. 1987) (en banc).

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC* is unpublished, but strikingly similar to the case at bar. No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025). There, after a Rule 41 dismissal mooted discovery motions and closed the case, the district court nevertheless held a sanctions hearing and imposed § 1927 sanctions based on counsel's

17

discovery conduct. *Id*. at *3–5. The Eleventh Circuit affirmed the bad-faith finding, while vacating the amount for recalculation under the fee-nexus requirement. *Id*. at *7–8. *Celsius* illustrates two relevant points here: voluntary dismissal and moot discovery motions do not bar sanctions review, and a hearing allows the district court to test counsel's explanations before making findings.

The appropriate remedy here is the same remedy Appellants sought below: vacatur and remand for an evidentiary hearing and reconsideration under the correct standards.

## II.   THE MAGISTRATE JUDGE APPLIED THE WRONG LEGAL FRAMEWORK UNDER § 1927.

The order also applied the wrong legal filter. Section 1927 does not require a merits ruling, a discovery ruling, or a completed spoliation adjudication. It asks whether an attorney "multiplies the proceedings" "unreasonably and vexatiously," and whether the fees imposed are "reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Eleventh Circuit has distilled that text into three requirements: unreasonable and vexatious conduct, multiplication of proceedings, and a financial nexus between the sanction and the excess proceedings.

18

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997); *Peer*, 606 F.3d at 1314. None of those requirements is a prior merits ruling.

### a. § 1927 does not require a merits ruling on the underlying claims.

The order denied sanctions in substantial part because the court "never ruled" on the counterclaims and because "simply filing a pleading—the merits of which were never addressed—cannot alone form the basis for sanctions under § 1927." (Doc. 184 at 5). It then distinguished Appellants' counterclaim-sanctions authorities because those cases involved substantive rulings on the offending claims. (Doc. 184 at 7).

That reasoning adds a prerequisite found nowhere in § 1927. A merits ruling may be useful evidence, but is not a statutory prerequisite. *Hyde v. Irish* directly forecloses a merits-contingent sanctions rule. 962 F.3d 1306 (11th Cir. 2020). *Hyde* held that § 1927 and inherent-authority sanctions are collateral because they protect the judicial process itself. *Id*. at 1309–10. The court explained that "[w]ithout the power to sanction, courts could not deter or punish violations of the rules." *Id*. at 1310. And it expressly stated: "These sanctions, like Rule 11 sanctions, do not require a court to rule on the merits of the underlying case." *Id*.

19

The order below, while citing *Hyde* for a different proposition, treated the lack of merits rulings as a reason not to examine counsel's conduct. The question under § 1927 was not whether the district court had already decided the motion to dismiss. It was whether counsel, after notice of the alleged defects, unreasonably and vexatiously multiplied proceedings by maintaining and using unsupported allegations to expand the litigation.

### b. Voluntary dismissal does not eliminate exposure to collateral sanctions.

Nor does Rule 41 dismissal erase sanctions exposure. A voluntary dismissal does not deprive a district court of authority to decide collateral sanctions. *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 395–98 (1990). The same collateral principle applies here through *Hyde*: § 1927 and inherent-authority sanctions are collateral to the merits. *Hyde*, 962 F.3d at 1309–10.

Here, Appellees created the posture on which the order relied. They voluntarily dismissed all counterclaims and third-party claims before the court ruled on the pending motion to dismiss, and in the face of a motion to compel the factual bases for their counterclaims. (Doc. 123 at 2, Doc. 121). The court then dismissed those claims and denied the motion to

20

dismiss as moot. (Doc. 129). Having dismissed before adjudication, but after imposing substantial excessive costs, Appellees should not be allowed to invoke the resulting absence of adjudication as a shield.

Even after final judgment, this Court has recognized that a district court must address unresolved sanctions issues, including § 1927 issues, rather than treating the end of the merits case as eliminating collateral sanctions review. *See Macort v. Prem, Inc.*, No. 04-15081, 2005 WL 8151794, at \*4–5 (11th Cir. Mar. 29, 2005) (unpublished).

The rule should be straightforward: voluntary dismissal may affect the evidence available and the amount recoverable, but it does not make sanctions unavailable. If it did, a party could plead incendiary claims, impose months—or in this case, years—of costs, dismiss before the court rules, and then argue sanctions are impossible because no ruling exists. That is antithetical to the purpose of § 1927.

### c. § 1927 does not require a prior discovery ruling.

The lower court made a parallel error as to discovery. It reasoned that because the docket reflected "no ruling on any discovery matter regarding the third-party claims/counterclaims," Appellants' position "rests on pure conjecture." (Doc. 184 at 7). But a Rule 37 order is not an

element of § 1927. Discovery rulings can be evidence of misconduct; they are not a prerequisite to sanctions.

In *Celsius*, the plaintiff voluntarily dismissed before the discovery motions were adjudicated, the district court denied those discovery motions as moot, and the case was closed. 2025 WL 2887300, at *3. The Eleventh Circuit nevertheless affirmed the district court's finding that counsel acted in bad faith based on discovery conduct, boilerplate objections, failure to answer basic discovery seeking support for the complaint, unsuccessful meet-and-confer sessions, and voluntary dismissal after the opposing party incurred fees. *Id.* at *7–8. This substantially mirrors the case at bar.

Appellants proffered that counsel used boilerplate discovery responses, refused meaningful conferral, sought spoliation and special-master proceedings without supplying foundational information, and dismissed before key disputes could be adjudicated. (Doc. 138 at 10–22; Doc. 138-4 at 15–20, 28–29; Doc. 194 at 5–7). The court could test that proffer through a hearing, but could not reasonably reject it solely because dismissal and timing prevented earlier discovery rulings.

**d. The District Court clearly erred in holding that counterclaims cannot multiply proceedings, and in any event, Appellants' theory concerned post-notice litigation conduct, not merely the filing of a pleading.**

Appellees, and the Court below, took the position that because some of the targeted conduct were counterclaims, that § 1927 does not apply. This is not supportable. Appellees will rely on *Peer*, that case supports the line Appellants draw.

*Peer* states that "[u]nlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." 606 F.3d at 1314. It also holds that § 1927 sanctions were unavailable against an individual because, although the claim was frivolous when filed, the individual did not multiply proceedings after filing. *Id*. He filed the complaint, filed limited papers, conducted "very little, if any, discovery," and withdrew two months later. *Id*.

This case is the opposite. Defense Distributed and its counsel did not file a single pleading and then withdraw. It filed three iterations of sprawling, unsupportable counterclaims and third-party claims. (Docs. 29, 49, 52). After Doc. 47 put counsel on notice of jurisdictional defects,

shotgun pleading defects, RICO deficiencies, predicate-act deficiencies, and the absence of an independent spoliation cause of action, Defense Distributed amended and maintained the same core theories. (Doc. 47 at 3–20; Docs. 49, 52). After Doc. 71 renewed those objections to the operative pleading, Defense Distributed continued litigating, pursued discovery, sought Rule 37(e) proceedings, sought special-master intervention, and dismissed only after the challenged claims had imposed substantial burdens, and only in the face of a motion to compel the factual bases of their counterclaims. (Docs. 71, 122, 123, 136, 138-4).

Defense Distributed injected expansive counterclaims and third-party claims into a simple, extant copyright case. Those claims added parties, issues, discovery burdens, and motion practice. Foreign circuits recognize that, definitionally, a frivolous counterclaim can multiply proceedings. The Seventh Circuit held that a counterclaim multiplied proceedings where "a reasonably careful attorney should have known" it lacked merit, and that "those who create unnecessary costs must also bear them." *Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005). The court found the counterclaim so clearly frivolous and complicating that refusal to sanction was itself an abuse of discretion. *Id.*

24

The Eighth Circuit's *Lee* decision is also instructive. There, counsel argued that a claim supported only by inadequate prefiling investigation could be sanctioned only under Rule 11. The Eighth Circuit rejected that argument because the baseless allegations "dominated discovery and motion practice for an extended period" before counsel abandoned them. *Lee v. First Lenders Ins. Servs.*, Inc., 236 F.3d 443, 446 (8th Cir. 2001). The same distinction applies here: Appellants do not complain merely that the pleadings were baseless; they complain that the incendiary, unsupported allegations unreasonably multiplied proceedings.

District authority in this Circuit points the same way. In *American Honda*, the Middle District of Florida held that "bringing [a] counterclaim and then continuing to prosecute it without any factual basis to support it" constituted bad faith and was "the quintessential type of conduct § 1927 is designed to deter." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, No. 5:04-cv-12-Oc-10GRJ, 2008 WL 906739, at *14 (M.D. Fla. Apr. 2, 2008).

The magistrate judge distinguished these cases because merits rulings had occurred in some of them. (Doc. 184 at 7). That misses the point. The cases show that counterclaims and post-filing conduct can

25

multiply proceedings. Whether the district court had already ruled on the claims is evidence, not a threshold requirement.

The order also minimized the amendments as necessitated by Plaintiff's amendment, but Appellants objected that Plaintiff filed one amended complaint while Defense Distributed filed three versions of the challenged counterclaim pleadings. (Doc. 194 at 5).

### e. The Order's rule would incentivize the conduct § 1927 is designed to deter.

Under the order's reasoning, a party could file sprawling, incendiary counterclaims; join nonparties and out-of-state individuals; use the allegations to justify broad discovery and attempt to force the appointment of a special-master; refuse to answer discovery requests with cut-and-paste boilerplate objections; refuse meaningful conferral; dismiss before adjudication; and then argue sanctions are unavailable because no merits or discovery ruling exists.

That rule would reward the very tactic § 1927 is designed to deter. The statute exists to require attorneys who create unnecessary proceedings to bear the excess costs caused by their conduct. *Peterson*, 124 F.3d at 1396. It is not limited to conduct already condemned in an earlier order. It reaches attorneys who "knowingly or recklessly pursue[]

26

a frivolous claim" or use tactics that needlessly obstruct litigation. *Amlong*, 500 F.3d at 1242.

The allegations here were not ordinary. Appellees tortured a simple copyright case into an opportunity to air unsupported allegations of criminal RICO, hacking, extortion, money laundering, export-control violations, obstruction of justice, threats of murder, and spoliation. (Doc. 52 at 4–5, 40–63). The absence of a prior ruling may affect the proof required, but it does not take sanctions off the table categorically. Where, as here, factual disputes remain, the proper remedy is a hearing.

## III. APPELLANTS PRESENTED A SUFFICIENT EVIDENTIARY PROFFER TO JUSTIFY FURTHER PROCEEDINGS.

The magistrate judge was not bound to wholesale accept Appellants' sanctions theory, but the record proffer was enough to require a hearing. Appellants identified early notice, continued maintenance of inflammatory allegations after notice, provided documentary support that specific attorneys made allegations with knowledge they were false, sought spoliation motion practice without ever identifying—much less requesting—the material in discovery, and voluntary dismissal in the face of a motion to compel the factual bases of

27

their allegations. (Doc. 121). That proffer was miles from "pure conjecture."

### a. Appellees received early notice of substantial defects.

The initial motion to dismiss (Doc. 47) gave early notice of the myriad deficiencies in Appellees' counterclaims. Filed December 16, 2024, it argued that the initial counterclaims lacked personal jurisdiction over nonresident counterdefendants; failed to plead a colorable RICO claim; were an impermissible shotgun pleading; lacked viable RICO predicates; failed to state Lanham Act, CFAA, DMCA, tortious-interference, trade-libel, FDUTPA, and spoliation claims; and asserted no cognizable independent spoliation cause of action. (Doc. 47 at 3–20).

The spoliation defect was especially clear. The original counterclaims asserted "Counterclaim Eight: Spoliation." (Doc. 29 at 92). But Doc. 47 pointed out that no independent spoliation cause of action existed in this posture. (Doc. 47 at 20). Appellees nevertheless continued to plead and pursue spoliation theories as an independent cause of action without ever seeking in discovery the materials they claimed were spoliated.

28

Another motion to dismiss at Doc. 71 renewed the same notice after the Second Amended Counterclaims became the operative pleading. It challenged the live pleading as jurisdictionally defective, shotgun, unsupported as to RICO predicates, deficient as to ancillary statutory and tort claims, and legally defective as to spoliation. (Doc. 71 at 3–23).

The magistrate judge refused to acknowledge the §1927 motion's reference to the motion to dismiss, as an improper attempt to incorporate a prior argument. (Doc. 184 at 7 n.7). But Appellants cited Doc. 71 as notice evidence. Section 1927's objective-recklessness inquiry turns on what counsel knew or should have known, and when. A motion identifying defects in the live pleading is probative of counsel's notice and objective reasonableness. It was error to disregard that evidence.

### b. Defense Distributed and its counsel continued and expanded the challenged allegations after notice.

Appellees did not respond to the motions to dismiss by narrowing claims. It amended and maintained the core criminal-enterprise theory. The amended pleadings alleged a "full-fledged criminal racketeering enterprise," a "black-market" operation, wire fraud, money laundering, extortion, threatened murder, hacking, export-control violations, and a

completely unsupportable invocation of the then-recent shooting death of the UnitedHealth CEO. (Doc. 49 at 5–6; Doc. 52 at 4–5).

Defense Distributed also publicly promoted the amended pleading as something more than a defensive filing. The Motion for Preliminary Injunction placed in the record that on December 30, 2024, Wilson, the principal of Defense Distributed, sent a newsletter stating that "the next legal development in th[e UnitedHealth CEO shooting] saga has become the civil prosecution of The Gatalog," linked to DEFCAD's hosted copy of the amended pleading, referred to Orlando as "a Florida backwater," and wrote that "[a] Florida federal court has just become the nation's instrument for discovering the details, the identities, and the even greater mysteries of America's 3D2A underground." (Doc. 53 at 5–6).

Appellants submit this is obvious evidence of an improper purpose. Defense Distributed publicly described the litigation as a discovery instrument into identities and "mysteries" of a broader community. That corroborated Appellants' sanctions theory: the counterclaims were being used to broaden discovery, exert public pressure, and use the Federal courts as an instrument for the entertainment of Defense Distributed's wealthy principal.

30

### c. The "hacking" allegations were particularly unsupportable, and known to be false by counsel.

The sanctions record also raised a serious factual question concerning the basis for alleging that Lettman hacked counsel Gingras's website. The Second Amended Counterclaims alleged that Lettman hacked the website of Defense Distributed's counsel and linked that conduct to the slipshod-defined criminal enterprise. (Doc. 52 ¶¶ 128–32).

But Gingras's later declaration described public WordPress comments and a comment form that allowed users to type any names and email address they desired. (Doc. 141-1 ¶¶ 10–15). His declaration also acknowledged that he later learned the comments may have been possible without knowledge of his administrative login or password. (Doc. 141-1 ¶¶ 10–18 & n.1). Appellants' reply then explained why that account undermined the pleaded allegation, emphasizing the gap between a public-comment mechanism and a pleaded hacking accusation against Lettman, who is not in North Carolina. (Doc. 150 at 2–4).

A hearing would allow the district court to determine what Gingras knew, whether he investigated before filing, and whether maintaining it was objectively reasonable.

**d. The spoliation and special-master proceedings provided evidence of intentional or reckless multiplication.**

Appellees first raised spoliation in its pleading, before discovery. (Doc. 29 at 92). It later filed a Rule 37(e) motion seeking spoliation relief and appointment of a special master, despite never seeking the allegedly spoliated materials in discovery. (Doc. 122; Doc. 136). It alleged systematic deletion of tens of thousands of messages and dozens of rooms, and sought to charge special-master costs to Appellants. (Doc. 136 at 3–4).

But the meet-and-confer transcript showed foundational problems. Appellants asked why documents supporting the spoliation claim had not been produced in discovery, identified an unsigned text file asserting deleted-message numbers which varied wildly, asked how any of the allegedly deleted material related to any claim or defense, and asked who prepared the unsigned report. (Doc. 138-4 at 18–20, 28–29). Flores invoked work product, said he wanted to brief the issue and have a hearing, refused to identify the source of the report, told Appellants they could explore the issue in a 500-word response, and said he had "conferral fatigue." (Doc. 138-4 at 19–20, 28–29).

32

The record also showed that Appellants had asked whether Defense Distributed's counsel Chad Flores had made any reasonable attempts to obtain or clarify the allegedly missing material before motion practice; the answer was, "I haven't." (Doc. 194 at 5; Doc. 138-4 at 26:13–18). That admission was central. If counsel did not ask for the allegedly spoliated material before pursuing spoliation and special-master relief, the sanctions issue became fact-bound: did counsel have a reasonable basis, or were they using undeveloped technical accusations to impose costs? At minimum, that issue justified an evidentiary hearing.

The proffer was broader than spoliation alone. The Rule 72 objection identified repeated cut-and-paste discovery objections, far-flung third-party deposition notices that were never taken, motion cycles generated and then mooted by Appellees' own sequencing, and use of special-master rhetoric as a financial cudgel. (Doc. 194 at 5–7). *Viz.*, the record contained concrete examples of conduct the magistrate judge could not fairly dismiss as "pure conjecture" without the requested hearing.

### e. Voluntary dismissal does not negate the evidentiary proffer.

Defense Distributed voluntarily dismissed all counterclaims and third-party claims before adjudication. (Doc. 123 at 2). The district court then dismissed those claims without prejudice and denied the motion to dismiss as moot. (Doc. 129). That explains why no merits ruling existed. It does not exculpate the conduct.

*Celsius* is again instructive. There, voluntary dismissal mooted discovery motions, but sanctions still proceeded because the relevant question was counsel's litigation conduct before dismissal. 2025 WL 2887300, at *3, *7–8. The Eleventh Circuit affirmed the bad-faith finding and vacated only for recalculation of the amount under the fee-nexus requirement. *Id.* at *8.

That is all Appellants ask here: remand for an evidentiary hearing.

## IV. THE RULE 72 PROCEEDINGS CONFIRM PRESERVATION AND SUPPORT REMAND.

Appellants timely objected to the magistrate judge's order. (Doc. 194). They challenged the legal standard applied, the characterization of the record as "pure conjecture," the absence of a hearing, the treatment

34

of prior notice filings, and the prematurity/sequencing rationale. (Doc. 194 at 3–10).

The district court never substantively reviewed those objections. Instead, after a settlement involving other parties, the district court dismissed the case, terminated pending motions, and closed the case. (Doc. 270; Doc. 273). Appellants were not parties to that settlement, and Matthew Larosiere is not an appellant.

The sanctions order received neither an evidentiary hearing nor district-judge review under Rule 72(a). The Eleventh Circuit should not affirm based on factual assumptions never tested in a hearing and never reviewed by an Article III judge.

*Peer* also supports remand. There, the district court failed to address the merits of a sanctions issue against later counsel. Because abuse-of-discretion review is deferential and the district court's range of choice is broad, the Eleventh Circuit remanded for consideration in the first instance rather than deciding the sanctions issue itself. *Peer*, 606 F.3d at 1313. The same approach is appropriate here.

## V.   THE INHERENT-AUTHORITY ISSUE SHOULD BE REMANDED WITH THE § 1927 ISSUE.

Appellants raised inherent authority in the sanctions motion, the magistrate judge addressed it, and Appellants preserved the issue in their Rule 72 objection. (Doc. 138; Doc. 184; Doc. 194).

Inherent authority matters because some litigation abuse may fall outside § 1927's strict multiplication framework or Rule 11's pleading-focused mechanism. *Peer* is useful on this point, where this Court held that although § 1927 did not reach Rosenbaum's limited post-filing conduct, inherent authority could address "hit and run" abuse where an attorney knowingly filed a baseless claim and withdrew before Rule 11 could operate. *Peer*, 606 F.3d at 1315–16. The court explained that inherent authority "extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Id.* at 1314–15 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

Here, inherent authority may reach party conduct, bad-faith litigation tactics, the public use of inflammatory allegations as leverage, and abusive discovery conduct. The same facts relevant to § 1927 support inherent-authority review: public promotion of the litigation as a tool to expose identities; unsupported hacking allegations; spoliation rhetoric

36

without foundational inquiry; refusal to provide basic conferral information; and voluntary dismissal in the face of a motion to compel the very factual bases of the deficient allegations.

To be sure, inherent authority requires subjective bad faith or conduct tantamount to bad faith. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–25 (11th Cir. 2017); *Hyde*, 962 F.3d at 1310. But that makes the need for a hearing even more acute. Subjective bad faith depends on what counsel and parties knew, what they intended, what they investigated, and why they pursued the challenged course. Those are precisely the issues Appellants identified in the motion and objection, and asked the district court to test through an evidentiary hearing.

The magistrate judge denied inherent-authority sanctions without resolving any factual dispute. That ruling should be vacated with the § 1927 ruling, and the district court should reconsider both theories following an evidentiary hearing.

37

## CONCLUSION

The Court should vacate the order denying sanctions and remand for an evidentiary hearing. On remand, the district court should reconsider Appellants' § 1927 and inherent-authority sanctions request under the correct legal framework, make attorney-specific findings, and, if it finds sanctionable conduct, make the fee-nexus findings required by § 1927.

Respectfully submitted,

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

38

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

The undersigned certifies, pursuant to 11th Cir. Rule 28-1, that this brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure (32)(a) because it contains 7,821 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements and type style requirements for Rule 32(a) because it has been prepared in a proportionally-based typeface with Microsoft Word 2023 in 14 point, Century Schoolbook font.

<u>/s/ Matthew Larosiere</u>
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was sent by CM/ECF on June 8, 2026, and notice of this filing was electronically served on all parties there registered for service.

<u>/s/ Matthew Larosiere</u>
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

40