# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

**Defense Distributed, et al.,**

**Plaintiffs-Appellees,**

**v.**

**No. 26-11420-DD**

**John Elik, Alexander Holladay,
Josh Stroke, John Lettman, and
MAF Corp.,**

**Defendants-Appellants.**

_____

## APPEAL OF A CIVIL CASE FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA DISTRICT COURT CASE NO. 6:24-CV-01629-AGM-LHP

## APPELLANTS' RESPONSE IN OPPOSITION TO APPELLEES' MOTION FOR SUMMARY AFFIRMANCE

Zachary Z. Zermay
3000 Coral Way, Ste 1115
Miami, FL 33145
Email: Zach@ZermayLaw.com
Telephone: (305) 767-3529

Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION AND SUMMARY OF THE OPPOSITION ................. 1

ARGUMENT ........................................................................................ 2

I.THE AGREEMENT'S TEXT DEFEATS APPELLEES' NONPARTY-RELEASE THEORY. ............................................................................ 2

II.SECTION 2.2 DOES NOT TURN CLIENTS INTO THEIR LAWYER'S DERIVATIVE CLAIMANTS. ................................................................ 5

III.APPELLEES' UNQUALIFIED AFFIDAVIT IS *IPSE DIXIT*. ............................................................................................................. 9

IV.*RES-GA COBBLESTONE* DOES NOT HELP APPELLEES. ................................................................................................................ 10

V.APPELLANTS DID NOT FORFEIT REVIEW BY NOT REFILING THE SAME DENIED MOTION. ........................................................... 11

VI.SUMMARY AFFIRMANCE IS INAPPROPRIATE ................................................................................................................ 14

CONCLUSION ................................................................................... 16

CERTIFICATE OF COMPLIANCE ..................................................... 17

CERTIFICATE OF SERVICE .............................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988) ......................13

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ..........................13

*Cunningham v. Hamilton County*, 527 U.S. 198 (1999)........................14

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002)...................................4

*Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158
  (5th Cir. 1969).................................................................... 1, 10, 15

*Hunter v. United States*, 608 U.S. ___ (2026) ..............................5, 12, 15

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
  478 U.S. 501 (1986)...............................................................4

*Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*,
  761 So. 2d 306 (Fla. 2000) ....................................................2

*Murchison v. Grand Cypress Hotel Corp.*,
  13 F.3d 1483 (11th Cir. 1994).................................................6

*RES-GA Cobblestone, LLC v. Blake Construction & Development, LLC*,
  718 F.3d 1308 (11th Cir. 2013)........................................... 10, 11

*Robbie v. City of Miami*, 469 So. 2d 1384 (Fla. 1985).............................2

*St. Joe Corp. v. McIver*, 875 So. 2d 375 (Fla. 2004) ...............................2

*Taylor v. Sturgell*, 553 U.S. 880 (2008)..............................................7, 8

*United States v. Woods*, No. 25-13542, slip op.
  (11th Cir. June 2, 2026).........................................................11

*Weitzman v. Bergman*, 555 So. 2d 448 (Fla. 4th DCA 1990)...................6

*Willy v. Coastal Corp.*, 503 U.S. 131 (1992)...........................................13

iii

**Rules**

Florida Rule of Professional Conduct 4-1.2(a) ...........................................8

Florida Rule of Professional Conduct 4-1.8(g) ...........................................8

Florida Rule of Professional Conduct 4-5.6(b) ...........................................8

**INTRODUCTION AND SUMMARY OF THE OPPOSITION**

Appellees' motion is a continuation, in miniature, of the litigation conduct that made § 1927 sanctions appropriate in the first place. Appellees seek summary affirmance based on a settlement agreement to which no Appellant was a party or signatory, much less received any consideration. That agreement could not plausibly extinguish the rights of Appellants who were dragged into Appellees' unsupportable counterclaims, incurred their own expenses, and timely appealed.

Summary affirmance is reserved for cases where one party is "clearly right as a matter of law" and there is "no substantial question" about the outcome. *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969). But the instant motion presents substantial questions at every step: whether a release signed by a non-appealing party can bind non-signatory appellants; whether a lawyer's representation of clients somehow makes the clients' claims derivative of the lawyer's personal claims; whether an agreement defining "████████" can be enforced against claims not released; whether the Florida Rules of Professional Conduct even permit advancing the practice-restraining construction Appellees advocate; and whether a denied collateral sanctions motion must be refiled after final judgment to preserve appellate review.

1

## ARGUMENT

### I.    THE AGREEMENT'S TEXT DEFEATS APPELLEES' NONPARTY-RELEASE THEORY.

At most basic Appellees' theory fails the threshold of contract formation. A release is a contract construed according to ordinary contract principles. *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000). Contracts require assent and consideration. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004); *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). Appellees identify neither as to any Appellant.

The agreement identifies the contracting parties as , on one hand, and ▮▮▮▮▮▮ in the underlying copyright action, on the other. MSA Ex. A at 9. It defines "▮▮▮▮" as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and "▮▮▮▮▮" as ▮▮▮▮▮▮▮▮▮▮▮▮▮ collectively. *Id.* at 10. The Defendants, at the time of the release, were ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. *Id.* at 9. Elik, Holladay, Stroke, Lettman, and MAF Corp. were not parties to it and did not sign it. *Id.* at 16-18.

2

The agreement's definition of "███████████" independently defeats Appellees' theory. It does not release every claim ever asserted in the litigation or every claim belonging to every former counterdefendant. It releases only the claims that the defined "███████████" ██████ ████████████. MSA Ex. A at 10. And the defined "███████████" is ████████—not Elik, Holladay, Stroke, Lettman, or MAF. *Id*. Thus, even before reaching consideration, or agency, the agreement's own structure answers the question: ███████ released claims ████████ had. He could not possibly release claims belonging to nonparty former counterdefendants. Appellees identify no textual mechanism by which Appellants' independent rights became ████████'s personal claims.

Similarly absent are Appellants from the consideration clause. The consideration flowed to the defined ████████████. MSA Ex. A at 12. The additional non-monetary consideration was personal to ████████: ████████████████████████████████████████████████████. *Id*. Nothing in the agreement identifies any consideration flowing to Elik, Holladay, Stroke, Lettman, or MAF in exchange for anything. Appellees' theory therefore requires a contract without assent and a release without consideration. This is unsupportable.

3

The representation clause is equally fatal. Each "██████" represented that it ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████. MSA Ex. A at 11. No signer represented authority to bind Appellants.

So too with the binding-effect clause. The agreement provides that it is b████████████████████████████████████████████ ████████████████████████████████████████. Ex. A at 16. Appellants are not Parties. They are not ████████'s heirs. They are not ████████'s successors. They are not ████████'s assigns. If the parties intended to bind nonparty former counterdefendants or extinguish any of their independent rights, the agreement would say so. It does not.

The Supreme Court's rule is straightforward: settling parties "may not dispose of the claims of a third party" or "impose duties or obligations on a third party" without that party's agreement. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986). And "a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Appellees ask this Court to do exactly what the Supreme Court forbids.

4

The recently decided *Hunter v. United States* confirms the obvious application of contract-law basics in the context of appeals waivers. There, even where the defendant actually signed an appeal waiver, the Supreme Court emphasized that a conflicting statement did not modify the agreement because there was no offer, acceptance, or "meeting of the minds." *Hunter v. United States*, 608 U.S. ___, slip op. at 6 (2026). The defect here is more basic. Appellees have no appeal waiver signed by any Appellant, no assent, no consideration, no authority, and no meeting of the minds. *Hunter* does not permit the enforcement of appellate waivers by implication; it confirms that waivers depend on actual agreement.

## II.   SECTION 2.2 DOES NOT TURN CLIENTS INTO THEIR LAWYER'S DERIVATIVE CLAIMANTS.

Appellees try to evade these basic contract principles by invoking Section 2.2's reference to persons acting "███████████████████████ ████████" ████████. Mot. 7–9. This argument is more alchemy than contract construction. They say Appellants are "████████████████" because ████████—who released his own claims when Appellants were already out of that case—is now counsel on appeal, and because the sanctions appeal is somehow derivative of ████████'s released fee claim—despite the fact that ████████, who had his own counsel in the

district court, is not seeking relief. That turns the attorney-client relationship upside down. Lawyers are conduits for the rights of their clients. Clients do not become their lawyer's agents by retaining one.

Even when retained, an attorney's representation of a client does not confer authority to compromise the client's rights. A lawyer must have clear and unequivocal authority to settle a client's claim. *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485–86 (11th Cir. 1994); *Weitzman v. Bergman*, 555 So. 2d 448, 449–50 (Fla. 4th DCA 1990). Appellees do not identify any authority by which ████████ personally could settle Appellants' appellate or sanctions rights. Nor could they. Their theory instead assumes that no authority was necessary because Appellants' rights were really ████████'s rights. That is wrong.

It is also inconsistent with the agreement's own released-claims structure. Section 2.2 may identify who counts as a "████████████," but Section 2.4 identifies what claims are released: claims belonging to that ████████████. MSA Ex. A at 10. Appellees therefore cannot use Section 2.2's connective language to expand the release to claims ████████ never owned. However broadly Appellees read "████████" or

6

"██████████" those words do not make Appellants' independent rights into claims ████████ "██████████████████████████████████."

The record also refutes it. The sanctions motion was filed by "Matthew Larosiere, John Elik, Alexander Holladay, Josh Kiel Stroke, John Lettman, and MAF Corp." A-512. It sought fees and expenses incurred by the "Counterdefendants" in defending against Appellees' counterclaims and litigation conduct. A-533–A-535. The motion was joint; signed by three separate counsel. Larosiere was represented below by Zermay; Elik, Stroke, and Lettman were represented by Larosiere; and Holladay and MAF were represented by De Pury. A-4, A-9. Appellees cannot transform each movant's separate rights into ████████'s personal property. It bears emphasis that the settlement agreement was between ████████ personally and the ████████ in the copyright action Larosiere originally brought through his own counsel. Because Appellees had already abandoned their claims against Appellants by the time of the release, ████████ cannot even plausibly be understood to have been acting as their counsel at that time.

In *Taylor v. Sturgell*, 553 U.S. 880 (2008), the Supreme Court rejected broad "virtual representation" theories attempting to bind

nonparties based on aligned interests or litigation overlap. *Id*. at 892–95, 901–05. The Court emphasized the "deep-rooted historic tradition that everyone should have his own day in court." *Id*. at 892–93. *Taylor* primarily concerned preclusion, but the obvious principle applies with force here. If nonparties cannot be bound by a judgment merely because of alignment or shared counsel, they cannot be stripped of appellate rights because another person's release uses the word " ██████ ."

Appellees' construction also creates an avoidable professional-conduct problem. Read naturally, the agreement resolves ██████ 's personal claims and imposes no restriction on his future representation of anyone. Appellees, however, ask the Court to read it as barring nonparty appellants from pursuing independent rights because ██████ appeared as counsel. That construction would convert a personal release into a settlement restriction on a Florida lawyer's right to represent other persons. Underlining the absurdity of Appellee's reading, Florida Rule of Professional Conduct 4-5.6(b) prohibits a lawyer from **participating** in a settlement agreement that restricts a lawyer's right to practice. This applies to both sides of the agreement. Rule 4-1.2(a) requires a lawyer to abide by the client's decision whether to settle, and Rule 4-1.8(g) requires

8

informed written consent by each client for an aggregate settlement. The Court need not decide an ethics issue here. It need only reject Appellees' strained reading which would mean that each lawyer participating in the release committed a violation. The plain meaning of the terms avoid this problem: ███████ released ████████'s claims; he did not, and could not, release Appellants' rights or surrender his ability to represent them.

Nor does Appellees' counsel-based theory justify the relief requested. Attorney Zermay has appeared for all Appellants in this Court. Doc. 16. If Appellees believed ████████'s continued participation as counsel created some issue under the agreement—and it does not— the most they could seek would be counsel-specific relief, not to extinguish the appellate rights of non-signatories who never released anything.

## III. APPELLEES' UNQUALIFIED AFFIDAVIT IS *IPSE DIXIT*.

Appellees support their nonparty-release theory with an affidavit resting on legal conclusions. It asserts that certain former counterdefendants ████████████████████████████ ████████████████. MSA Ex. A at 3–4. But it identifies no facts showing assent, agency, assignment, consideration, authority, or any

other basis for binding Appellants to a contract they did not sign. Calling nonparties "███████" does not make them so.

The affidavit's key assertion does not even identify Appellants Stroke or MAF, although Appellees seek summary affirmance against all five Appellants. MSA Ex. A at 3–4. And it misdescribes Doc. 273 as an order dismissing the case "without prejudice," while Appellees' motion elsewhere relies on the order as dismissing the case "with prejudice and without costs." *Compare* MSA Ex. A at 4, with Mot. 10. This comes nowhere near carrying Appellees' burden under *Groendyke*.

## IV. *RES-GA COBBLESTONE* DOES NOT HELP APPELLEES.

Appellees' mootness case, *RES-GA Cobblestone, LLC v. Blake Construction & Development, LLC*, 718 F.3d 1308 (11th Cir. 2013), is miles from this case. There, the appellant **himself** signed a post-judgment agreement resolving the very sanctions and fee awards he was appealing. *Id.* at 1312–13. He paid the amount required, received relief from the balance of sanctions, agreed to dismiss a related appeal, filed the consent order in the pending appeal, and never reserved the right to continue appellate review. *Id.* at 1313, 1315–17. The Eleventh Circuit held that his own objective conduct mooted his own appeal. *Id.*

10

That reasoning cuts against Appellees. *RES-GA* turns on the **appealing** party's objective manifestation of intent to abandon appellate rights. *Id.* at 1315. The court stressed that Roberts "did not merely pay part of a judgment," but signed a *quid-pro-quo* agreement disposing of the judgments against him. *Id.* at 1316–17. No Appellant did anything comparable here. *RES-GA* is a case about an appellant's own settlement conduct. It is not authority for binding nonparties to someone else's unrelated settlement.

Nor does *Woods* assist Appellees. *Woods* merely applied *Groendyke* where a *pro se* coram-nobis petitioner had no sound reason for waiting decades to raise known challenges to his conviction. *United States v. Woods*, No. 25-13542, slip op. at 3 (11th Cir. June 2, 2026). The government was "clearly correct as a matter of law" because the record revealed an obvious procedural defect. *Id.*

## V.    APPELLANTS DID NOT FORFEIT REVIEW BY NOT REFILING THE SAME DENIED MOTION.

Appellees next argue that Doc. 184 and Doc. 273 gave Appellants procedural "chances" to preserve the sanctions dispute, and that Appellants forfeited appellate review by failing to file a renewed

11

sanctions motion or move to reopen the case. Mot. 9–12. That argument misunderstands both the appeal and the order below.

Appellants are appealing because they filed a sanctions motion, supported it with record material, requested an evidentiary hearing, and the court held that motion was not an appropriate basis for relief. Doc. 184 denied Doc. 138 outright. A-660–A-670. Its closing paragraph stated only: "**To the extent** that there is **an appropriate basis** for any **renewed** motion for sanctions by the Former Counter-Defendants, any such motion **may** be filed within thirty (30) days of entry of final judgment in this case, **if appropriate**." A-669 (emphasis added). That permissive reservation, read in the context of the order, at most permitted renewed motion practice if a later or additional basis existed. But Appellants are appealing the denial of the sanctions motion without an evidentiary hearing in the first place. That was not a command to refile the same motion after final judgment to preserve review of the final denial already entered.

*Hunter* again confirms the point. Waiver requires an affirmative signal of abandonment; silence or declining to "pick[] a fight" is not enough. *Hunter*, slip op. at 6. Appellants did not abandon appellate

12

review. They filed a notice of appeal identifying the final dismissal order and the sanctions order. A-690–A-693. Their not improperly filing a duplicative motion or to moving to reopen the case was not an affirmative abandonment of the issue already denied and already appealed.

The question on appeal is whether Doc. 138 supplied an appropriate basis for sanctions—or, at minimum, for the evidentiary hearing Appellants requested. *See* A-511–A-536, A-588–A-590, A-660–A-670. The court rejected that existing basis. A-660–A-670. That is what is on appeal. Appellees cannot convert the order's permissive statement about possible future motion practice on a speculative different basis into a requirement that Appellants duplicate the same finally denied motion before seeking appellate review.

Sanctions and fee issues are collateral. A voluntary dismissal does not divest a court of authority to address sanctionable conduct. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990). Sanctions may address abuse of the judicial process apart from the merits of the underlying claims. *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992). Attorney-fee disputes are generally collateral to the merits. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200–03 (1988). And sanctions

13

orders ordinarily await final judgment for appellate review. See *Cunningham v. Hamilton County*, 527 U.S. 198, 204–10 (1999). Nothing in that framework requires a party to refile a denied sanctions motion after final judgment to preserve the denial for appeal.

Nor did Doc. 273 waive Appellants' rights. The final dismissal order dismissed the settled case "with prejudice and without costs" under Local Rule 3.09(b), subject to a sixty-day reopening window. A-688–A-689. That order followed a joint notice of settlement filed by Larosiere and Defendants. A-684–A-687. Appellants were not parties to that settlement, and the initial brief says so. Initial Br. 4. The final order made Doc. 184 reviewable. It did not, and could not, retroactively supply Appellants' assent to a release they never signed.

## VI.    SUMMARY AFFIRMANCE IS INAPPROPRIATE.

Appellees do not ask the Court to affirm because the sanctions appeal is plainly meritless under § 1927 or the district court's inherent authority. They ask the Court to enforce a disputed post-judgment release against non-signatories by asking the court to ignore centuries of basic contract law in favor of their strained reading of the word "███████."

14

To acquire summary affirmance, Appellees must show that they are "clearly right as a matter of law" and that there is "no substantial question" as to the outcome. *Groendyke*, 406 F.2d at 1162. They cannot do that while relying on a contract that does not name Appellants as parties, was not signed by Appellants, recites no consideration to Appellants, includes no representation of authority to bind Appellants, does not include Appellants claims in the "███████████," and binds only the ████████████████████████. Appellees' reading would compromise nonparty clients' rights through their lawyer's personal release of claims completely unrelated to the representation. Again, the release related to ██████████████████. This appeal relates to litigation conduct stemming from a 109-page RICO counterclaim which roped Appellants into what was, until then, an ordinary copyright dispute. They are miles apart.

*Hunter* is instructive here too. Even when an appellant actually signs an appeal waiver, enforcement is ultimately a judicial act. The Supreme Court explained that the real-world effect of an appellate waiver "turns only" on whether the appellate court enforces it, and that enforcement implicates not only the parties' interests but the judiciary's

15

own responsibility for the judgment left in place. *Hunter*, slip op. at 9–10. This case is easier. Appellees have no signed appeal waiver from any Appellant. They ask this Court to infer one from a settlement signed by someone else and enforce it summarily against nonparties. The Court should decline that invitation.

If the Court believes the release issue warrants further consideration, it can be addressed by the merits panel after full briefing. What Appellees cannot obtain is the extraordinary remedy of summary affirmance based on a settlement agreement that no Appellant joined.

## CONCLUSION

The motion for summary affirmance should be denied. In the alternative, any release-related issue should be deferred to the merits panel after full briefing.

Respectfully submitted, DATED June 28, 2026

/s/ *Matthew Larosiere*
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

/s/ *Zachary Z. Zermay*
Zachary Z. Zermay
Zermay Law, P.A.
3000 Coral Way, Ste 1115
Miami, FL 33145
Email: Zach@ZermayLaw.com
Telephone: (305) 767-3529
*Counsel for Appellants*

16

## CERTIFICATE OF COMPLIANCE

This response complies with Federal Rule of Appellate Procedure 27(d) because it contains fewer than 5,200 words, excluding the portions exempted by Rule 32(f). This response complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 because it was prepared in a proportionally spaced 14-point typeface.

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

17

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent by CM/ECF on June 28, 2026, and notice of this filing was electronically served on all parties there registered for service.

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*
