No. 26-11420-DD

_____

In the United States Court of Appeals for the Eleventh Circuit

_____

Defense Distributed, et al.,

Plaintiffs — Appellees,

v.

John Elik, Alexander Holladay, Josh Stroke, John Lettman, and MAF Corp.,

Defendants—Appellants.

_____

Appeal from the United States District Court for the
Middle District of Florida; No. 6:24-CV-01629-AGM-LHP

_____

**Appellees' Reply in Support of
Motion for Summary Affirmance**

_____

Charles Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed,
Charles Flores, and Andino Reynal

# Table of Contents

Table of Authorities ................................................................................... iii

Reply ....................................................................................................... 1

I.      A settlement resolved this case. ................................................... 1

II.     The settlement's Release extinguishes Appellants' claims. .......... 2

    A.      The appeal pursues "███████████." ............................... 2

    B.      Appellees are "█████████." ........................................... 2

    C.      Each Appellant is a "████████." ................................... 3

        1.      Appellants are acting "██████ Larosiere. ........................ 3

        2.      Appellants' claims are "███████ ██ Larosiere. ................ 5

    D.      No counterargument succeeds. ......................................... 5

        1.      Breadth regrets do not change the contract. .................... 5

        2.      The no-assent argument is wrong. .................................. 7

        3.      The no-consideration argument is wrong. ........................ 8

III.    The district court proceedings after settlement confirm and independently establish that summary affirmance is required. ......................... 9

Certificate of Compliance ........................................................................ 14

## Table of Authorities

*Access Now, Inc. v. Sw. Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004). ..................................................................11, 12

*Barfield v. Brierton*,
   883 F.2d 923 (11th Cir. 1989) ........................................................................ 11

*Braunstein v. Marsh Landing Cmty. Ass'n at Estero, Inc.*,
   No. 2:19-cv-700-FtM-29MRM, 2020 WL 2329941
   (M.D. Fla. May 11, 2020) ..................................................................................4

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)...........................................................................................10

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) .............................................................................................6

*Equity Lifestyle Props., Inc. v. Fla. Mowing And Landscape Serv., Inc.*,
   556 F.3d 1232 (11th Cir. 2009) ..........................................................................5

*Lalow v. Codomo*,
   101 So. 2d 390 (Fla. 1958)................................................................................10

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) .............................................................................................4

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
   478 U.S. 501 (1986) .............................................................................................6

*Real Estate World Florida Commercial, Inc. v. Piemat, Inc.*,
   920 So. 2d 704 (Fla. Dist. Ct. App. 2006).......................................................9

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .........................................................................................6, 7

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
   513 U.S. 18 (1994)..............................................................................................12

**Reply**

Summary affirmance is proper twice over. The Release extinguishes the appeal as a matter of law on undisputed documents, and Appellants' post-settlement forfeiture independently forecloses their only claim of error. Either ground alone leaves no substantial question about the outcome.

The critical point about Release scope is purely textual. The Release █████ ████████████████████████████████████████████████████████████ ████. Yet no serious textual argument is made against either coverage basis. Appellants offer no textual reason why an appeal prosecuted by Larosiere is not ██████████████████████████ or why a fee-and-sanctions claim built on Larosiere's released dispute is not █████████████████ If Larosiere made a bad bargain, that may create an issue between him and his clients. It does not create a surviving appeal. The contract supplies the answer, and the opposition supplies no reason to resist it.

## I.    A settlement resolved this case.

The full settlement record is before the Court. Exhibit A supplied█████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

The motion does not depend on hidden intent, disputed negotiations, or credibility findings. It depends on the Release's text and the post-settlement docket. The Court can read both and affirm as a matter of law.

1

**II.    The settlement's Release extinguishes Appellants' claims.**

**A.    The appeal pursues "Released Claims."**

First, the motion established that the appeal asserts █████████████ " within the meaning of ████████████ . *See* Mot. at 1-2, 4-6. That is clearly so because the appeal seeks fees, costs, sanctions, expenses, and appellate relief from the settled action, and ███████████████████████████████████████████████ ████████

The opposition does not seriously contest this point, for good reason. It contests other parts of the Release analysis—mainly who counts as a ██████████ ████—without offering any argument unique to the ████████████ " provision. Nor could it. The appeal exists only because of the settled action, seeks relief only from that action, and therefore falls within the Release's broad claim definition.

**B.    Appellees are "Released Parties."**

Second, the motion established that Defense Distributed and its attorneys are ██████████████████████████████████████████ *See* Mot. at 1-2, 6. That is clearly so because ██████████████████████████████████████ ████████████████████████ " which covers the moving Appellees. *Id.*

The opposition does not seriously contest this point either, for good reason. It contests other parts of the Release analysis—again, mainly who counts as ██████████ ████—without offering any argument unique to the ██████████████ provision.

Nor could it. ██████████████████████████████████████████ and the moving Appellees therefore fall within the Release's protected class.

### C.     Each Appellant is a "Releasing Party."

Third, the motion established that each Appellant is a ████████████ ██████████████████████████████████████ That is clearly so because ████████████████████████████████████████████████ ██████████████████████████████████ ; Larosiere's signature supplied assent for that defined releasing side; and Appellants now prosecute this appeal through Larosiere to pursue a fee-and-sanctions claim derivative of his released sanctions theory. *Id.*

This is where the opposition places almost all of its weight, and every objection fails. The opposition offers no serious textual argument about the words that matter: ████████████████████████ It instead offers retrospective regret about why a Release with this reach should not have been made, why that bargain now feels inconvenient, and why Appellants wish the contract had been narrower. But courts enforce the agreement made, not the agreement a party later wishes had been made.

### 1.     Appellants are acting "through" Larosiere.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████   *See* Mot. at 7-8 (████████████████

3

Ordinarily and especially here, to act ▮▮▮▮▮▮ an attorney entails pursuing a claim by means of, by agency of, or under the procedural control of the named releasing person. That is this appeal. *Id.*

In litigation, parties act through counsel. Florida law says the attorney of record is the client's agent, so "any notice by or to the attorney or act by the attorney in the proceeding shall be accepted as the act of or notice to the client." *Braunstein v. Marsh Landing Cmty. Ass'n at Estero, Inc.*, No. 2:19-cv-700-FtM-29MRM, 2020 WL 2329941, at *2 (M.D. Fla. May 11, 2020) (quoting Fla. R. Jud. Admin. 2.505(h)). The Supreme Court has long made the same point: in "our system of representative litigation," a party is "deemed bound by the acts of his lawyer-agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962).

That rudimentary textual analysis ends the question. Larosiere was the lawyer prosecuting the fee-and-sanctions dispute below. He is the lawyer prosecuting this appeal now. Appellants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ So the text fits the facts exactly. ▮▮▮▮▮▮▮

▮▮▮▮▮▮ other way would break the rule that a court "must read the contract to give meaning to each and every word it contains," and must "avoid treating a word as

redundant or mere surplusage." *Equity Lifestyle Props., Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009).

### 2.    Appellants' claims are "derivative of" Larosiere.

The Release also covers Appellants because their fee-and-sanctions claim is ███████████████████. *See* Mot. at 8-9 (quoting Release § 2.2). The claim did not arise independently from Appellants' own separate injury, separate motion, or separate entitlement. It arose from the same sanctions theory Larosiere advanced below, the same alleged litigation conduct, and the same requested fee-and-expense relief.  Appellants are carrying forward a dispute released by ████████████

████████████████████

The opposition again has no serious textual answer to this coverage basis. It does not explain why a fee-and-sanctions appeal prosecuted by Larosiere, based on Larosiere's district-court sanctions effort, and seeking relief through Larosiere's litigation work is not ███████████████ This appeal fits that phrase cleanly, and Appellants' contrary view again breaks the rule against surplusage.

### D.    No counterargument succeeds.

### 1.    Breadth regrets do not change the contract.

The question here is what the Release actually does—not whether Larosiere should have agreed to it. Those are different questions. Contract interpretation begins with the document, and the document defines the ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

That text includes everything the counterparties reasonably understood the defined ███████████████ was releasing through Larosiere's signature.

At most, the opposition argues that Larosiere *should not have* generated so broad a release. Opposition at 5–6. But that does not make the Release ineffective. If Larosiere exceeded a duty to a client, that may create some separate issue between them. It does not rewrite the Release to change its scope. Appellees were entitled to contract for broad protection, and the Release gives them exactly that.

The opposition's cases do not change the text. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986), says settling parties may not dispose of third-party claims "without that party's agreement," *id.* at 529, and Larosiere supplied the necessary agreement for the defined "Releasing Party." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (cited by the opposition at 4), proves only that strangers stay strangers, *id.* at 294; the EEOC had no agency, representation, or authority relationship like Larosiere had with Appellants here. And *Taylor v. Sturgell*, 553 U.S. 880, 884–85, 901 (2008) (cited by the opposition at

6

7-8), rejected "virtual representation," *id.* at 884-85, not *actual* representation by counsel under a written Release that ████████████████████████ ████████████████████ None of those cases permits Appellants to nullify the Release they now regret.

### 2.    The no-assent argument is wrong.

Lack of assent is no answer. *Contra* Opposition at 1. ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████, his signature supplied assent for the defined ████████████    ████████████████ ████████████████████████████.

The opposition's contrary reading deletes the operative language. It would limit ████████████████████ to Larosiere alone unless every covered agent, representative, attorney, or derivative actor also signed. That is not what the Release says. The manifest point of the ████████████████████████████████ was to prevent claims released through Larosiere's signature from continuing through someone else. This appeal does exactly that. Appellants prosecute a released fee-and-sanctions dispute through the same lawyer whose signature bound the defined releasing side. No more is required.

The opposition's rule would also disable much of the Release. ██████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ Ex. A at 9 (Release §§ 2.2–2.3). Those provisions work

only because the signatories supplied assent for the defined classes they agreed to

bind and protect. Appellants cannot enforce those definitions when useful and erase

them when inconvenient.

### 3. The no-consideration argument is wrong.

Lack of consideration is no answer either. *Contra* Opposition at 1. The Release

itself establishes sufficient consideration twice over.

First, the Release establishes its sufficient consideration in ██████████

██████████████████████████████████████████████████

████████████

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

Ex. A at 10 (Release Section 1) (emphasis added).

8

Second, ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████ ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████

Florida law requires nothing more than that. In particular, it does *not* require individualized consideration for every person within the contract's defined classes. Once a contract is supported by consideration between the contracting sides— clearly present here—the rights and obligations of all persons within the defined releasing and released classes are effectuated. *See, e.g.*, *Real Estate World Florida Commercial, Inc. v. Piemat, Inc.*, 920 So. 2d 704 (Fla. Dist. Ct. App. 2006) (a party "need not be a direct beneficiary of proceeds for consideration to be valid… It is sufficient that there be an exchange of promises from which [it] will benefit," and consideration "need not pass directly to the promisor… but may move to either the promisor or a third person."). The Release easily satisfies that rule.

## III. The district court proceedings after settlement confirm and independently establish that summary affirmance is required.

The post-settlement docket independently confirms what the Release′s text already establishes: nothing survives for this Court to decide. But the Court need not rely on that confirmation point alone. Even apart from the Release, Appellants

9

forfeited the only appellate theory they now press: that the district court reversibly erred by denying sanctions without an evidentiary hearing. The district court gave them a post-judgment path to request that very hearing after the prematurity concern disappeared. They declined it. That independently requires summary affirmance.

Florida law makes that confirmation legally significant. When construing a contract, "the actions of the parties may be considered as a means of determining the interpretation that they themselves have placed upon the contract." *Lalow v. Codomo*, 101 So. 2d 390, 393 (Fla. 1958). Here, every party's post-settlement conduct reflected a single shared understanding: the settlement ended everything. Larosiere dismissed the Actions with prejudice. Appellees performed. And Appellants—with a thirty-day renewed-sanctions window and a sixty-day reopening window open before them—filed nothing, reserved nothing, and said nothing about any surviving fee-and-sanctions dispute. Under *Lalow*, that uniform conduct is powerful evidence that the Release means what its text says.

Power to decide the underlying sanctions request is *not* the issue. Everyone agrees the district court could have addressed sanctions after final judgment. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990). And everyone agrees this Court could review a resulting sanctions decision, whether that decision was the original order merged into final judgment or a later order entered after a renewed

10

sanctions motion. *See generally Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989). The problem is not jurisdiction of either the Court below or this Court. The problem is merits error—the lack thereof.

As Appellants frame their appeal, the key question is whether the district court committed harmful reversible error by denying the sanctions motion *without holding an evidentiary hearing*. But even if such a hearing could have been required (an issue the Court need not decide), it was not required here because Appellants did not ask for one when such a request was allowed.

The Eleventh Circuit "has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). That rule applies here. Appellants now complain that the district court should have held an evidentiary hearing. But after final judgment, the court gave them a renewed-motion procedure through which to request one. They did not use it.

The forfeiture is not that Appellants failed to refile a denied motion merely for the sake of refiling it. The forfeiture is narrower and stronger. Appellants never told the district court that a live fee-and-sanctions dispute survived the settlement and required an evidentiary hearing after final judgment. They had "every opportunity

to raise the new theory in district court" and "at no time did" so. *Id.* at 1331. That is precisely what appellate forfeiture bars.

The Supreme Court treats settlement as the voluntary surrender of appellate review. Where a dispute ends by settlement, "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal," leaving the judgment "not unreviewable, but simply unreviewed by his own choice." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). That is this case. The settlement resolved the action that generated the sanctions dispute, and Appellants accepted the resulting dismissal without objection. This appeal asks the Court to restore a remedy that Appellants' side of the case surrendered by choice.

Appellants knew the sanctions motion had been denied as premature. They knew final judgment had arrived. They knew the district court allowed a renewed sanctions motion within thirty days and reopening within sixty. They let both windows pass without asking for a hearing or preserving any surviving dispute. That is not harmful error. It is a declined cure.

## Conclusion

The motion should be granted with an order summarily affirming the district court's decision.

> Respectfully submitted,
> /s/ Charles Flores
> Charles Flores
> Flores Law PLLC
> 917 Franklin Street, Suite 600
> Houston, Texas 77002
> (713) 893-9440
>
> Counsel for Defense Distributed,
> Charles Flores, and Andino Reynal

## Certificate of Compliance

This filing complies with the type-volume limitations of the Federal Rules of Appellate Procedure because it contains no more than 2,572 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally spaced typeface in 14-point font using Microsoft Word for Mac Version 16.109.3.

/s/ Charles Flores
Charles Flores