No. 26-11420-DD

In the United States Court of Appeals for the Eleventh Circuit

Defense Distributed, et al.,

Plaintiffs — Appellees,

v.

John Elik, Alexander Holladay, Josh Stroke, John Lettman, and MAF Corp.,

Defendants—Appellants.

Appeal from the United States District Court for the
Middle District of Florida; No. 6:24-CV-01629-AGM-LHP

**Brief of Appellees**

Charles Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed,
Charles Flores, and Andino Reynal

## Notice of Interested Persons

The Certificate of Interested Persons filed by the Appellants is correct and complete.

Respectfully submitted,
/s/ Charles Flores
Charles Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed, Charles Flores, and Andino Reynal

## Statement Regarding Oral Argument

The Court should decide this appeal without oral argument. The first two grounds for rejecting the appeal—the [redacted] and forfeiture—apply settled law to a clear documentary record. The alternative merits grounds require closer examination of individual filings; but that is conventional, record-specific review under familiar sanctions standards. The briefs and cited materials adequately present those issues, and oral argument would not materially assist their resolution.

This collateral dispute has already prolonged litigation the settlement was meant to end. A dispute over the needless multiplication of proceedings should not itself generate another unnecessary stage of litigation. The Court should resolve the appeal promptly on the briefs and bring the dispute to a close.

## Table of Contents


Notice of Interested Persons .... ii

Statement Regarding Oral Argument .... iii

Table of Authorities .... vi

Summary of the Argument .... 1

Argument .... 3

I. The district court's judgment should be affirmed because of the settlement. 3

A. A settlement resolved this case. .... 3

B. The settlement's [redacted] extinguishes Appellants' claims. .... 6

1. The appeal pursues "[redacted] .... 6

2. Appellees are "[redacted] .... 8

3. Each Appellant is a "[redacted] .... 10

C. The supposed answers fail. .... 14

1. Breadth regrets do not change the contract. .... 14

2. The no-assent argument is wrong. .... 15

3. The no-consideration argument is wrong. .... 16

D. The district court proceedings after settlement confirm that the [redacted] extinguished these claims .... 17

II. Appellants forfeited their challenges to the sanctions denial. .... 20

A. Appellants forfeited their argument that an evidentiary hearing remained necessary after final judgment. .... 20

B. Appellants forfeited their argument that the sanctions dispute survived settlement. .... 21

C. There is no excuse. .......... 22

III. The district court's decision is correct on the merits .......... 24

A. An evidentiary hearing was not required. .......... 26

B. The 28 U.S.C. § 1927 test was not satisfied. .......... 27

1. Section 1927 does not apply to parties. .......... 28

2. Section 1927 does not apply to disputed allegations. .......... 28

3. The requisite "bad faith" was not otherwise shown. .......... 30

4. The requisite "multiplication" has not been shown. .......... 37

5. Appellants did not establish the required fee nexus. .......... 38

6. Local Rule 3.01(h) barred incorporation by reference. .......... 38

C. The higher bar of inherent authority was not satisfied either. .......... 39

D. The subsequent fee denial accords with the decision below. .......... 42

Conclusion .......... 43

Certificate of Compliance .......... 44

## Table of Authorities

### Cases


*Access Now, Inc. v. Sw. Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) .................................................. 20

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
500 F.3d 1230 (11th Cir. 2007) .................................................. 31

*Barfield v. Brierton*,
883 F.2d 923 (11th Cir. 1989) .................................................. 24

*Braunstein v. Marsh Landing Cmty. Ass'n at Estero, Inc.*,
No. 2:19-cv-700-FtM-29MRM, 2020 WL 2329941
(M.D. Fla. May 11, 2020) .................................................. 11

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC,*
No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025) .................................................. 26

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) .................................................. 39

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) .................................................. 24, 32

*Daniels v. Gov't Emps. Ins. Co.*, No. 8:19-cv-2612-KKM-SPF,
2022 WL 504016 (M.D. Fla. Feb. 19, 2022) .................................................. 31

*Didie v. Howes,*
988 F.2d 1097 (11th Cir. 1993) .................................................. 26, 27

*Donaldson v. Clark,*
819 F.2d 1551 (11th Cir. 1987) (en banc) .................................................. 26

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) .................................................. 15

*Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*,
556 F.3d 1232 (11th Cir. 2009) .......................................................... 12

*Hyde v. Irish,*
962 F.3d 1306 (11th Cir. 2020)....................................................39, 41

*Lalow v. Codomo,*
101 So. 2d 390 (Fla. 1958) .............................................................. 18

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962)......................................................................... 12

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986)......................................................................... 14

*Norelus v. Denny's, Inc.*,
628 F.3d 1270 (11th Cir. 2010) .......................................................... 25

*Peer v. Lewis*,
606 F.3d 1306 (11th Cir. 2010) ............................................ 28, 40, 41

*Peterson v. BMI Refractories*,
124 F.3d 1386 (11th Cir. 1997) ...................................................37, 38

*Real Estate World Fla. Com., Inc. v. Piemat, Inc.*,
920 So. 2d 704 (Fla. Dist. Ct. App. 2006)......................................... 17

*Reider v. Philip Morris USA, Inc.*,
793 F.3d 1254 (11th Cir. 2015)........................................................... 23

*RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*,
718 F.3d 1308 (11th Cir. 2013)........................................................... 19

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ......................................................................... 15

**Statutes**

28 U.S.C. § 1927 .................................................................................. passim

**Rules**

Fed. R. Civ. P. 11 .......... 29, 40

Fed. R. Civ. P. 12 .......... 34, 37

Fed. R. Civ. P. 37 .......... passim

Fed. R. Civ. P. 41 .......... passim

M.D. Fla. Local Rule 1.10 .......... 36

M.D. Fla. Local Rule 3.01(h) .......... 38

## Summary of the Argument

The judgment should be affirmed for three independent reasons.

I. The parties' settlement and [redacted] extinguish this appeal. After the order under review was issued, the parties settled the underlying action and executed a comprehensive [redacted] Its text covers the fee-and-sanctions claims, protects Defense Distributed and its attorneys, and binds persons acting "[redacted] Larosiere or pursuing claims "[redacted] him. Appellants satisfy both provisions: they prosecute this appeal through Larosiere and seek to revive the joint fee-and-sanctions claim he pursued and released below. Removing him from the appellate caption does not remove their claims from the [redacted] scope. No disputed intent, extrinsic negotiations, or credibility finding is needed. The Court need only apply the agreement's definitions to the claims and parties before it. That [redacted] ended the dispute. It does not permit this appeal.

II. Appellants forfeited their keystone issues. The appeal posits that the sanctions dispute survived the settlement and that an evidentiary hearing remained necessary after final judgment. Yet neither argument was made below at the appropriate juncture. When the district court denied the sanctions motion, it expressly permitted an appropriate renewed motion within thirty days of final judgment; and when it dismissed the settled case, it allowed any party to move to

reopen within sixty days on good cause. Appellants let both windows close and never asked the district court to reserve or decide the issues. That constitutes forfeiture.

III. The district court correctly denied sanctions on the merits. The written record permitted the court to identify the motion's defects without a special hearing, and Appellants' authorities required no further process on this record. Section 1927 does not authorize sanctions against Defense Distributed as a represented party, and filing the counterclaims alone did not establish sanctionable multiplication. The remaining allegations supplied no missing bad faith: the Rule 41 dismissal was procedurally authorized, the discovery complaints rested on conjecture, and the spoliation theory sought premature adjudication of a pending dispute. Appellants also failed to connect sanctionable conduct to excess proceedings and resulting fees. Inherent authority supplied no alternative basis because the record did not establish subjective bad faith. These were failures of proof, not categorical rules immunizing counterclaims or requiring prior merits and discovery rulings. The later fee denial in the refiled action accords with the same result. The district court applied the correct standards, explained its conclusions, and acted within its discretion.

This litigation has run its course. It should end here.

## Argument

**I. The district court's judgment should be affirmed because of the settlement.**

The Appellants released the claims they now pursue. After the district court entered the decision at issue, the parties settled the underlying action and executed a release. The release is clear, operative, and dispositive. This appeal is barred.

The critical point is purely textual. The [redacted] binds both Larosiere and those acting "[redacted] him or pursuing claims "[redacted] him. And no serious textual argument is made against either coverage basis. Appellants offer no textual reason why an appeal prosecuted by Larosiere is not proceeding "[redacted] him, or why a fee-and-sanctions claim built on Larosiere's released dispute is not "[redacted] him. If Larosiere made a bad bargain, that may create an issue between him and his clients. Regardless, the [redacted] bars this appeal.[1]

**A. A settlement resolved this case.**

This appeal arises from a fee-and-sanctions dispute in litigation the parties later settled. Larosiere filed the action in the Middle District of Florida against Defense Distributed and others, who for some time pursued counterclaims that were later voluntarily dismissed without prejudice.

[1] Portions of this argument are redacted to protect confidential settlement material. The Court may review the corresponding unredacted argument and supporting materials in the sealed version of Appellees' Motion for Summary Affirmance and its sealed Exhibit A.

The parties settled in late March 2026. Appellees' Mot. Summ. Affirmance Ex. A at 1 (Leitner Aff.) (cited hereafter as "Ex. A"). They first executed a [redacted]. Ex. A at 6–7 (March 2026). They then executed the [redacted], referred to now as the "[redacted] Ex. A at 9–18 (April 2026).

The [redacted] is fully effective and operative. Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed, and Dioskouroi, LLC have substantially performed the settlement and [redacted] obligations, including all required payments. Ex. A at 2, ¶ 4 (Leitner Aff.). The accompanying Leitner Affidavit authenticates the [redacted] [redacted] [redacted] [redacted] the [redacted] and the notice of breach. Ex. A at 1–4, ¶¶ 2–4, 11 (Leitner Aff.).

This appeal is covered by [redacted] Section 2.4's "[redacted] [redacted] definition. The appeal seeks review of orders denying a fee-and-sanctions motion filed in those actions. The release covers "[redacted]" whether "[redacted]" and "[redacted]," if they "[redacted]" the action below:

[redacted]

Ex. A at 9 ([redacted] § 2.4). That provision clearly covers this appeal.

Appellees fit within the [redacted] Section 2.3 "[redacted]" definition. It names Defense Distributed a "[redacted] and also protects its "[redacted]

Ex. A at 9 ([redacted] § 2.3). That provision clearly covers this brief's Appellees.

Appellants fit within the [redacted] Section 2.2 "[redacted] definition. It expressly covers "[redacted] and "[redacted]" acting "[redacted], [redacted]" [redacted]

[redacted]

Ex. A at 9. Below, Larosiere acted both as a party and counsel of record for everyone pressing the motion at issue. He is not an appellant now, but he is counsel of record for all Appellants in this Court. Appellants therefore act "[redacted] Larosiere insofar as Larosiere is now their appellate counsel; and their appeal is "[redacted]" the claim Larosiere made below as a litigating party. Both of those provisions ("[redacted]" and "[redacted]") make each of the Appellants a [redacted]" under [redacted] Section 2.2.

That the [redacted] bars this appeal was clear immediately. So Appellees gave notice that continued prosecution of the appeal breaches the [redacted] Ex. A at 4, ¶ 11 (Leitner Aff.); Ex. A at 20–21 (Notice of Breach). Larosiere and Appellants have continued the appeal anyway.

### B. The settlement's [redacted] extinguishes Appellants' claims.

The [redacted] resolves this appeal in three steps. The appeal asserts [redacted]. Appellees are [redacted]. Appellants are [redacted] because they proceed through Larosiere and derive their claim from his released fee motion.

#### 1. The appeal pursues "[redacted]."

The [redacted] defines "[redacted]" to include "[redacted]," whether "[redacted]" and whether

"[redacted]," if they "[redacted]" the Actions:

[redacted]

Ex. A at 9. Upon payment, the [redacted] "[redacted]." Ex. A at 12–13 (§ 5.1).

This appeal fits comfortably within that language. Appellants seek review of orders denying a fee-and-sanctions motion. They assert a claimed right to fees, costs, sanctions, or appellate relief tied to those orders. That claimed right arises out of, concerns, and relates to the Actions.

[redacted] Section 11 confirms the same result. The parties there agreed that [redacted]

[redacted]

Ex. A at 15 ([redacted] § 11). The fee award Appellants now seek to revive was pending when the parties settled. Section 11 extinguished it along with everything else.

Section 5.3 removes any doubt. There Larosiere agreed to "[redacted]":

[redacted]

Ex. A at 13 ([redacted] § 5.3). The [redacted] obligated its parties to end the entire dispute, not just part of it. Under all these provisions—both independently and especially conjunctively—an appeal seeking fees and sanctions from the settled suit below is not allowed.

Appellants have not seriously contested this point, for good reason. They contest other parts of the [redacted] analysis—mainly who counts as a [redacted]—without offering any argument unique to the "[redacted]" provision. Nor could they. The appeal exists only because of the settled action, seeks relief only from that action, and therefore falls within the [redacted]'s broad claim definition.

**2. Appellees are "[redacted]."**

Appellees are protected because the [redacted] releases Defense Distributed and its attorneys. [redacted] Section 2.3 defines "[redacted]" to include Defense Distributed by name, along with "[redacted]":

[redacted]

Ex. A at 9 ([redacted] § 2.3). Defense Distributed and its attorneys are therefore each a [redacted] entitled to invoke its protections.

[redacted] Section 2 expressly preserves the Appellees' right to present [redacted]" that release—*i.e.*, their right to present the instant argument: "[redacted]" Ex. A at 11 ([redacted] § 2). Bringing this appeal violates the [redacted] Using the [redacted] to end it does not.

Appellants do not seriously contest this point either, for good reason. They contest other parts of the [redacted] analysis—again, mainly who counts as a [redacted]—without offering any argument unique to the "[redacted]" provision. Nor could they. Defense Distributed is named, its attorneys are protected, and the Appellees therefore fall within the [redacted] protected class.

### 3. Each Appellant is a "[redacted]."

Appellants are each a "[redacted]" because Larosiere is a "[redacted]." [redacted] Section 2.2 defines "[redacted]" to include Larosiere and [redacted]" him:

[redacted]

Ex. A at 9 ([redacted] § 2.2). The Section 2.2 "[redacted]" provision reaches this appeal in two independent respects, either of which suffices to warrant affirmance.

This is where Appellants put almost all of their opposition, and every objection fails. They offer no serious textual argument about the words that matter: "[redacted] and "[redacted]." They instead offer retrospective regret about why a [redacted] with this reach should not have been made, why that bargain now feels inconvenient, and why Appellants wish the contract had been narrower. But courts enforce the agreement made, not the agreement a party later wishes had been made.

### (a) Appellants are acting "[redacted] Larosiere.

First, Appellants are each a "[redacted] because they prosecute this appeal "[redacted] Larosiere. [redacted] Section 2.2 covers both Larosiere and "[redacted]" him. Ex. A at 9 ([redacted] § 2.2) (emphasis added). That text reaches all of the Appellants here.

Larosiere held two relevant roles below. He sued as a plaintiff. He also served as counsel of record for other parties who jointly sought fees and sanctions (Elik, Stroke, Lettman). Doc. 138 at 24; Doc. 194 at 11. The moving parties did not file separate motions. They sought one fee-and-sanctions award in unison, with Larosiere as both a co-movant party and counsel of record for three movants. *Id.*

The same relationship continues on appeal. Larosiere is not a named appellant. But in this Court, he is counsel of record for every Appellant (including those he did not represent below). Appellants therefore act "[redacted] Larosiere in the plain and ordinary sense of Section 2.2. They cannot avoid the [redacted] by removing Larosiere from the caption while continuing to litigate through him.

In litigation, parties act through counsel. Florida law says the attorney of record is the client's agent such that "any notice by or to the attorney or act by the attorney in the proceeding shall be accepted as the act of or notice to the client." *Braunstein v. Marsh Landing Cmty. Ass'n at Estero, Inc.*, No. 2:19-cv-700-FtM-

29MRM, 2020 WL 2329941, at *2–5 (M.D. Fla. May 11, 2020). Of course, in "our system of representative litigation," a party is "deemed bound by the acts of his lawyer-agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962).

That rudimentary textual analysis ends the question. Larosiere was the lawyer prosecuting the fee-and-sanctions dispute below. He is the lawyer prosecuting this appeal now. Appellants acted through him then, and they act "[redacted] him now. The [redacted] makes persons acting "[redacted] him part of the defined "[redacted]" Ex. A at 9 ([redacted] § 2.2). So the text fits the facts exactly. Reading Section 2.2 any other way would break the rule that a court "must read the contract to give meaning to each and every word it contains," and must "avoid treating a word as redundant or mere surplusage." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009).

**(b) Appellants' claims are "[redacted]" Larosiere.**

Additionally, Appellants are each a [redacted] because the appellate claim they press is "[redacted]" Larosiere's released fee-and-sanctions claim. Again [redacted] Section 2.2 covers both Larosiere and "[redacted] him. Ex. A at 9 ([redacted] § 2.2) (emphasis added). The "[redacted]" provision makes each Appellant a "[redacted]" independently of the prior "[redacted] provision.

The "[redacted]" provision applies because the appeal seeks no new, independent right. It seeks reversal of orders denying the same *joint* motion Larosiere filed and pursued below with the other movants. Doc. 138 at 24; Doc. 194 at 11. What Appellants pursue here is not separate from Larosiere's claim; it is the appellate form of the same claim he originated below and released in the settlement. The appeal is therefore "[redacted]" Larosiere because it has the same source, seeks the same relief, and exists only as the next stage of his released claim.

A contrary reading would erase the phrase "[redacted]" from Section 2.2. If that phrase does not cover parties pursuing the same fee-and-sanctions claim Larosiere filed, released, and now prosecutes for them on appeal, it covers nothing relevant here. The [redacted] cannot be read that way. Section 2.2 gives "[redacted]" independent work to do, and its work is to prevent Larosiere's released claim from continuing under other movants' names. Appellants are therefore [redacted] for this appeal.

Appellants again have no serious textual answer to this coverage basis. They do not explain why a fee-and-sanctions appeal prosecuted by Larosiere, based on Larosiere's district-court sanctions effort, and seeking relief through Larosiere's litigation work is not "[redacted]" him. This appeal fits that phrase cleanly, and Appellants' contrary view again breaks the rule against surplusage.

### C. The supposed answers fail.

#### 1. Breadth regrets do not change the contract.

The question here is what the [redacted] actually does—not whether Larosiere should have agreed to it. Those are different questions. Contract interpretation begins with the document, and the document defines the "[redacted]" to include Larosiere and persons acting "[redacted]" him. Ex. A at 9 ([redacted] § 2.2). It then releases all "[redacted]" that the defined "[redacted]"—including the full class Section 2.2 identifies—had, has, or may claim to have against the [redacted]. Ex. A at 9, 12–13 ([redacted] §§ 2.4, 5.1). That text includes everything the counterparties reasonably understood the defined "[redacted]" was releasing through Larosiere's signature.

Appellants argue at most that Larosiere *should not have* generated so broad a release. Appellants' Resp. Summ. Affirmance 5–6 (cited hereafter as "Appellants' Resp."). But that does not make the [redacted] ineffective. If Larosiere exceeded a duty to a client, that may create some separate issue between them. It does not rewrite the [redacted] to change its scope. Appellees were entitled to contract for broad protection, and the [redacted] gives them exactly that.

The opposition's cases do not change the text. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986), says settling parties may not dispose of third-party claims "without that party's agreement," *id.* at 529, and

Larosiere supplied the necessary agreement for the defined "[redacted]." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (cited at Appellants' Resp. 4), proves only that strangers stay strangers, *id.* at 294; the EEOC had no agency, representation, or authority relationship like Larosiere had with Appellants here. And *Taylor v. Sturgell*, 553 U.S. 880, 884–85, 901 (2008) (cited by Appellants' Resp. 7–8), rejected "virtual representation," *id.* at 884–85, not *actual* representation by counsel under a written [redacted] that expressly covers persons acting "[redacted] or "[redacted]" the signatory. None of those cases permits Appellants to nullify the [redacted] they now regret.

**2. The no-assent argument is wrong.**

Lack of assent is no answer. *Contra* Doc. 18 at 1. Because the [redacted] defines the "[redacted]" to include both Larosiere and persons acting "[redacted]" him, Ex. A at 9 ([redacted] § 2.2), Larosiere's signature supplied assent for the defined "[redacted]," including persons acting "[redacted] him or pursuing claims "[redacted]" him.

The opposition's contrary reading deletes the operative language. It would limit the defined "[redacted]" to Larosiere alone unless every covered agent, representative, attorney, or derivative actor also signed. That is not what the [redacted] says. The manifest point of the [redacted]" language

was to prevent claims released through Larosiere's signature from continuing through someone else. This appeal does exactly that. Appellants prosecute a released fee-and-sanctions dispute through the same lawyer whose signature bound the defined releasing side. No more is required.

The opposition's rule would also disable much of the [redacted] Section 2.2 covers non-signing heirs, agents, assigns, representatives, attorneys, and derivative actors. Section 2.3 protects non-signing officers, directors, stockholders, partners, members, employees, subsidiaries, parent companies, attorneys, insurers, claims professionals, and affiliates. Ex. A at 9 ([redacted] §§ 2.2–2.3). Those provisions work only because the signatories supplied assent for the defined classes they agreed to bind and protect. Appellants cannot enforce those definitions when useful and erase them when inconvenient.

#### 3. The no-consideration argument is wrong.

Lack of consideration is no answer either. The [redacted] itself establishes sufficient consideration twice over.

First, the [redacted] establishes its sufficient consideration in the Section 1 Recital about the deal's "[redacted]":

[redacted]

Ex. A at 10 ([redacted] § 1) (emphasis added).

Second, the [redacted] establishes its valid consideration with the Section 4 "[redacted]" provision that specifies consideration exchanged by both sides. A standard payment-for-release exchange occurred, with a trade of "[redacted]" plus specified money and additional relief. Ex. A at 11–12 ([redacted] § 4) (emphasis added).

Florida law requires nothing more than that. In particular, it does *not* require individualized consideration for every person within the contract's defined classes. Once a contract is supported by consideration between the contracting sides—clearly present here—the rights and obligations of all persons within the defined releasing and released classes are effectuated. *See Real Estate World Fla. Com., Inc. v. Piemat, Inc.*, 920 So. 2d 704, 706 (Fla. Dist. Ct. App. 2006). The [redacted] easily satisfies that rule.

### D. The district court proceedings after settlement confirm that the [redacted] extinguished these claims.

The post-settlement proceedings confirm what the [redacted] text establishes: the fee-and-sanctions claims were extinguished. Florida law permits courts to

consider the parties' conduct as evidence of the interpretation they placed upon their agreement. *See Lalow v. Codomo*, 101 So. 2d 390, 393 (Fla. 1958). Here, Appellants sought no exception to the district court's disposition of the entire case as settled, despite express opportunities to pursue any surviving dispute.

The district court closed the entire case after receiving the Joint Notice of Settlement. Doc. 270. Its order stated that "the case has been settled in its entirety," dismissed the case "with prejudice and without costs," and directed the Clerk to terminate pending motions. Doc. 273. It also allowed any party, within sixty days and on good cause shown, to reopen the case for further proceedings:

| | | |
|---|---|---|
| 03/31/2026 | 273 | **ENDORSED ORDER dismissing the case with prejudice and without costs, pursuant to Local Rule 3.09(b) of the Middle District of Florida. The Court, having been advised by the 270 Joint Notice of Settlement that the case has been settled in its entirety, dismisses the case subject to the right of any party, within sixty days from the date of this Order, to move the Court to enter a stipulated form of final order or judgment, or, on good cause shown, to reopen the case for further proceedings. The Clerk is directed to terminate any pending motions and close this case. Signed by Judge Anne-Leigh Gaylord Moe on 3/31/2026. (TAH)** (Entered: 03/31/2026) |

Doc. 273. Appellants never invoked that procedure to assert that their fee-and-sanctions claims remained unresolved.

A separate opportunity to pursue sanctions also remained available. When denying the original motion, the magistrate judge provided that, "[t]o the extent that there is an appropriate basis for any renewed motion for sanctions by the Former Counter-Defendants, any such motion may be filed within thirty (30) days of entry of final judgment in this case, if appropriate." Doc. 184 at 9. Appellants filed no renewed motion. Nor did they ask the district court to reserve the sanctions dispute,

preserve their pending objections, or narrow the dismissal to exclude their claims. Their opposition acknowledges that they neither renewed the motion nor sought reopening. Appellants' Resp. 11–14.

That conduct matches the [redacted] terms. Section 5.3 required dismissal of the Actions with prejudice, and Section 11 required each party to bear its own attorneys' fees and costs, including any pending fee award. Ex. A at 13, 15. The district court entered a comprehensive dismissal, terminated pending matters, and received no request to preserve a fee-and-sanctions exception. The agreement and its implementation point to the same result.

Appellants now insist that the settlement concerned other parties and left their claims intact. Appellants' Br. 35. But they never asked the district court to implement that asserted distinction. They let both procedural windows close without seeking further proceedings on any surviving claim. Their inaction in the district court confirms—not replaces—the textual showing above: the [redacted] ended the fee-and-sanctions dispute.

* * *

For these reasons, the settlement's [redacted] either compels affirmance on the merits or moots the case. *See RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1317 (11th Cir. 2013) ("[a]s a general principle, settlement

between the parties in litigation renders the case moot"). Either way, the Appellees prevail as a matter of law, and the Court need not reach either the Part II forfeiture issue or the Part III merits.

## II. Appellants forfeited their challenges to the sanctions denial.

This Court "has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Under that rule, Appellants forfeited both of their appeal's foundational premises. They now argue that their sanctions dispute survived settlement and required an evidentiary hearing. But when the district court afforded them renewed-motion procedures to address both issues below, the Appellants did nothing. That constitutes forfeiture.

### A. Appellants forfeited their argument that an evidentiary hearing remained necessary after final judgment.

Appellants declined an express opportunity to seek an evidentiary hearing after final judgment. The district court permitted an appropriate renewed sanctions motion within thirty days after entry of final judgment. Doc. 184 at 9. That procedure allowed Appellants to identify any sanctions request that remained viable, explain why it required an evidentiary hearing, and request one. They filed no renewed motion and let the deadline expire. Appellants' Resp. 11-14.

Their present demand for a hearing overlooks that omission. Once final judgment arrived, Appellants never asked the district court to determine whether an evidentiary hearing remained necessary notwithstanding the settlement and dismissal. They instead seek a remand for proceedings they did not request through the procedure the district court expressly provided. The forfeiture concerns that unpresented demand for post-settlement proceedings, not merely their failure to repeat the original motion.

### B. Appellants forfeited their argument that the sanctions dispute survived settlement.

Appellants separately failed to present their contention that the sanctions dispute survived the disposition of the entire case. Doc. 273 treated the case as settled "in its entirety," dismissed it with prejudice and without costs, and directed termination of pending motions. The same order expressly allowed any party to seek reopening within sixty days on good cause shown. Yet Appellants did not ask the district court to exclude their sanctions dispute from that disposition, restore their pending objections, or decide any issue they believed remained live. They allowed the reopening period to expire without seeking any of that relief. Appellants' Resp. 11–14.

That omission goes directly to the error they now assert. Appellants complain that the district court closed the case without substantively reviewing their

objections. Appellants' Br. 35. But the closing order supplied an express procedure for seeking further proceedings. A motion explaining that the settlement did not resolve their sanctions dispute would have presented the asserted error directly and allowed the district judge to address it. Appellants never made that request.

The unused renewal procedure reinforces the same failure. Within thirty days after final judgment, Appellants could have renewed any sanctions request they contended remained viable and explained why the settlement did not resolve it. Doc. 184 at 9. They pursued neither available avenue: a request to reopen the case for adjudication of a surviving dispute or a renewed request for sanctions after final judgment. Appellants' Resp. 11–14.

This forfeiture reaches every ground for reversal. Each ground seeks further adjudication of the same sanctions dispute and therefore depends on the contention that the dispute survived the post-settlement disposition. Appellants never presented that contention to the district court despite full opportunities to do so.

**C. There is no excuse.**

Pre-settlement Rule 72 objections do not address later preservation failures. Those objections challenged the sanctions order's legal standards, treatment of the record, and denial of an evidentiary hearing. Appellants' Br. 34–35. But they preceded the settlement and the order terminating pending matters. They did not

address whether the later settlement left the sanctions dispute intact or whether an evidentiary hearing remained necessary after the comprehensive dismissal. Those questions arose from the post-settlement disposition, and Appellants never put them before the district court.

Nor does this argument require litigants to refile every denied motion. Appellants' contrary characterization overlooks the intervening settlement and dismissal. Appellants' Resp. 11–14. The missing presentation was not another copy of their original sanctions arguments. It was their present contention that, notwithstanding the settlement and termination of pending matters, a live dispute remained and required further proceedings. Their earlier objections did not present that contention, and their notice of appeal did not ask the district court to resolve it.

*Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254 (11th Cir. 2015), defeats the argument about pre-settlement objections. *Reider* found forfeiture because the appellant "had ample time to correct the district court's misunderstanding" through an available post-ruling procedure—"a motion for reconsideration" or "a separate motion for a new trial"—yet "did neither." *Id.* at 1261. So too here. Appellants had ready vehicles to present their present contentions to the district court—a renewed motion and a motion to reopen—and used neither. That is forfeiture.

The collateral nature of sanctions does not change the result. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990), establishes that a district court may adjudicate collateral issues after the action ends. That explains why further proceedings remained possible; it does not excuse a failure to request them.

Merger addresses reviewability, not that missing presentation. Under *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989), an appeal from final judgment ordinarily brings prior interlocutory rulings before this Court. But that principle does not establish that Appellants preserved their distinct contention that the intervening settlement and dismissal left a sanctions dispute requiring further adjudication. Their notice of appeal identifies the orders they challenge; it does not supply the post-settlement argument they never presented below.

Appellants let both procedural windows close without requesting a post-judgment hearing or asserting that their sanctions dispute survived settlement. They should not obtain a remand to pursue proceedings they declined to seek below. Even apart from the [redacted] scope, the Court should affirm without reaching their challenges to the sanctions denial.

## III. The district court's decision is correct on the merits.

Additionally, and in the further alternative—if the Court holds that this appeal is not defeated by the [redacted] and if the Court further holds that the appellate

complaints were not forfeited—the decision below should be affirmed in substance. The district court correctly rejected Appellants' effort to obtain sanctions merely by attacking the counterclaims' merits. Their chosen sanctions theories required separate showings of sanctionable multiplication under § 1927 and subjective bad faith under inherent authority. The court correctly found neither.

That decision receives deferential review. The abuse-of-discretion standard "recognizes the range of possible conclusions the trial judge may reach," *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1280 (11th Cir. 2010), and requires affirmance unless the ruling reflects a clear error of judgment or an incorrect legal standard. The magistrate judge stayed comfortably within that permissible range.

Appellants' contrary framing mischaracterizes the order. The district court did not hold that counterclaims can *never* multiply proceedings, that § 1927 categorically requires a merits ruling, or that discovery misconduct cannot be sanctioned without a prior Rule 37 order. It held that filing these counterclaims "alone" did not establish sanctionable conduct, Doc. 184 at 5–6; that the particular discovery accusations before it rested on conjecture rather than an adjudicated or otherwise demonstrated abuse, *id.* at 7–8; and that the remaining spoliation theory improperly sought a substantive determination of an unresolved issue through the sanctions motion, *id.* at 8–9. As the analysis below shows point by point, those are

applications of the governing standards to this record, not categorical prerequisites invented by the court.

### A. An evidentiary hearing was not required.

Procedurally, the district court acted within its discretion by denying sanctions on the written record. Whether an additional hearing is necessary depends on the circumstances, the court's knowledge of the proceedings, and the need for further inquiry—not merely a party's request. *See Donaldson v. Clark*, 819 F.2d 1551, 1560–61 (11th Cir. 1987) (en banc). Here, the court considered the parties' submissions and explained why the pleading, discovery, and spoliation theories were insufficient or premature. Doc. 184 at 2, 5–9. Appellants' best authorities do not establish that a hearing was necessary to make that determination.

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025), sees no error here. It concerned protections owed to attorneys before sanctions are imposed—not a movant's entitlement to a hearing before sanctions are denied. *Id.* at *5. That a hearing supported sanctions there does not establish that denying one here was an abuse of discretion.

*Didie v. Howes*, 988 F.2d 1097, 1105 (11th Cir. 1993), likewise turns on a materially different record. The district court there avoided the sanctions motion's merits on procedural grounds, faced contradictory factual accounts, and supplied no

factual findings or legal conclusions permitting appellate review. Here, the court adjudicated the motion and explained why Appellants' showing did not establish sanctionable conduct. Doc. 184 at 5–9. *Didie* required a hearing necessary for an informed decision; it did not make a hearing a prerequisite to every reasoned denial.

Under these standards, the written record alone justified denying sanctions without further process. As the following sections explain, Appellants' submissions failed to establish sanctionable multiplication under § 1927 or subjective bad faith under inherent authority, and their remaining spoliation theory sought premature adjudication of a pending dispute. *See* Doc. 184 at 2–9. The district court could identify those defects from the parties' submissions and the docket without conducting an evidentiary hearing.

**B. The 28 U.S.C. § 1927 test was not satisfied.**

Appellants' motion below and their arguments here rest principally on § 1927. The district court rejected that theory because (i) the statute does not reach Defense Distributed as a represented party; (ii) filing the counterclaims alone did not establish sanctionable multiplication or bad faith, and voluntary dismissal and refiling supplied no missing showing; (iii) the discovery-and-conferral accusations rested on conjecture; and (iv) the remaining spoliation theory prematurely sought a merits ruling on an unresolved dispute. Doc. 184 at 2 n.4, 5–9. Each conclusion was

correct for the reasons the court gave. The additional grounds advanced in Appellees' response below also support the denial and provide further bases for affirmance. *See* Doc. 149.

### 1. Section 1927 does not apply to parties.

Insofar as the motion sought relief under 28 U.S.C. § 1927 against Defense Distributed, it was meritless because § 1927 applies to an "attorney or other person admitted to conduct cases," not a represented litigant. 28 U.S.C. § 1927. Defense Distributed therefore could not itself be sanctioned under that statute. The district court was correct to reject the § 1927 claim against Defense Distributed on that basis. *See* Doc. 184 at 2 n.4.

### 2. Section 1927 does not apply to disputed allegations.

Insofar as the motion sought § 1927 sanctions merely for filing the counterclaims, the district court correctly rejected that theory. Section 1927 targets unreasonable and vexatious multiplication of proceedings; it does not make the asserted lack of merit of a pleading, standing alone, sanctionable. *See Peer* v. Lewis, 606 F.3d 1306, 1314–16 (11th Cir. 2010). The district court therefore held only that "simply filing" these counterclaims, whose merits were never adjudicated, could not "alone" establish § 1927 liability. Doc. 184 at 5–6. That holding does not immunize counterclaims from § 1927. It requires what the statute itself requires: sanctionable conduct that actually multiplies proceedings.

Rule 11 underscores that distinction. It specifically regulates the factual and legal inquiry supporting pleadings and provides a separate-motion requirement and twenty-one-day safe harbor. Fed. R. Civ. P. 11(b), (c)(2). Appellants neither sought Rule 11 relief nor alleged compliance with its requirements. Doc. 184 at 6 n.7. That omission does not categorically foreclose every other sanctions mechanism, but neither can Appellants relabel their pleading objections and thereby dispense with the distinct requirements of the mechanisms they did invoke: multiplication under § 1927 and subjective bad faith under inherent authority.

The asserted lack of "pre-suit investigation" also fails on its own terms. Doc. 138 at 5. The operative counterclaims identify the Gatalog actors, their alleged roles, and specific conduct attributed to them. They link Larosiere, Elik, Holladay, Celentano, Stroke, Lettman, and MAF Corp. to alleged file transfers, copyright registrations, cryptocurrency transactions, and harassment, and identify particular websites and communication platforms--including thegatalog.com, maf-arms.com, ctrlpew.com, Rocketchat, and Discord. *See* Doc. 52. The pleading likewise identifies the alleged "FEDCAD" campaign, chargeback threats, the "Rogue 9" file distribution, asserted export-control violations, public statements, archived materials, communications, and alleged admissions. *Id.* That defeats the premise that the claims appeared from nowhere without factual inquiry.

Appellants' reliance on their motions to dismiss as "notice" proves no more. A motion to dismiss establishes that an adversary asserted legal and factual defects; it does not establish that the asserted defects were correct or that opposing counsel thereafter knowingly pursued frivolous claims. If Appellants invoke Doc. 71 only to prove notice, it proves notice of their contentions, not frivolousness. If they instead invoke Doc. 71's arguments to prove that the counterclaims were defective, they return to the merits arguments the district court properly refused to incorporate wholesale into the sanctions motion. *See* Doc. 184 at 7 n.7.

The governing standard therefore defeats Appellants' pleading theory. Negligence is not enough; counsel must knowingly or recklessly pursue a frivolous claim or needlessly obstruct litigation of a nonfrivolous claim. The district court expressly recognized that "something more than a lack of merit is required," Doc. 184 at 2–3, and correctly refused to substitute Appellants' view of the pleadings for proof of the misconduct § 1927 requires. *Id.* at 5–6.

**3. The requisite "bad faith" was not otherwise shown.**

Appellants next tried to establish bad faith through a collection of complaints about how the counterclaims were litigated. But an attorney multiplies proceedings "unreasonably and vexatiously" only when the conduct is sufficiently egregious to be tantamount to bad faith. *See Amlong*, 500 F.3d at 1239. Mere negligence does not

suffice; the attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct litigation of a nonfrivolous one. *Id.* at 1241–42. The district court correctly found no such conduct here.

**(a) The Rule 41 dismissal without prejudice was proper.**

Appellants first relied on Defense Distributed's voluntary dismissal of its counterclaims. Doc. 138 at 3. But the district court did not hold that voluntary dismissal extinguishes collateral sanctions jurisdiction. It held that the dismissal itself did not demonstrate bad faith, even accepting Appellants' allegation that substantially similar claims were later refiled elsewhere. Doc. 184 at 6 n.7.

That conclusion was correct. Nothing about the dismissal shows a compelled production disobeyed, a deposition taken for no legitimate purpose, a court order flouted, or a prior finding of abuse. Once the claims were dismissed, proceedings in this action ceased rather than expanded. And *Daniels v. Gov't Emps. Ins. Co.*, No. 8:19-cv-2612-KKM-SPF, 2022 WL 504016, at *1–2 (M.D. Fla. Feb. 19, 2022), explains why dismissal with an intent to refile elsewhere does not itself establish bad faith: Rule 41 permits a party to dismiss without prejudice, to refile elsewhere, and to seek a litigation advantage in doing so. The district court relied on precisely that distinction. Doc. 184 at 6 n.7.

Appellants' authorities about continuing sanctions *jurisdiction* therefore answer a question the district court did not decide. *Cooter & Gell* and its ilk establish that dismissal does not deprive a court of authority to address collateral sanctions. They do not establish that exercising the Rule 41 right to dismiss is itself evidence of sanctionable bad faith. The former proposition is undisputed; the latter is the proposition Appellants failed to prove.

**(b) The discovery-based critiques fail.**

The district court also correctly rejected Appellants' discovery theory. It did not hold that § 1927 requires a prior discovery ruling as a matter of law. It observed that no discovery ruling substantiated Appellants' accusations and that their motion therefore asked the court to accept their own characterization of unfinished discovery as fact. Doc. 184 at 7–8. On this record, the court found that showing conjectural and insufficient. *Id.*

The record supports that conclusion. Appellants faulted Defense Distributed for noticing depositions "across the country" that were "never conducted." Doc. 138 at 3, 15. But depositions that never occurred did not themselves generate deposition proceedings or the costs associated with them. Appellants likewise characterized Defense Distributed's discovery responses as "stonewalling," but there was no successful motion to compel, no order finding a failure to respond, and

no sanctionable defiance of a discovery obligation concerning the dismissed counterclaims. Routine objections and incomplete discovery in a case terminated before discovery ran its course do not themselves establish § 1927 bad faith.

**(c) The spoliation position was not improper.**

The district court separately rejected the spoliation theory because the pertinent issues were either dismissed, previously addressed, or still pending. Doc. 184 at 8–9. In particular, the spoliation motion against Larosiere remained unresolved, so Appellants' sanctions motion effectively asked the court to decide the merits of that dispute indirectly. *Id.* The court correctly declined to use a collateral sanctions request as a substitute vehicle for adjudicating the pending spoliation issue.

The underlying filing independently defeats Appellants' accusation that the spoliation position was fabricated. Rule 37(e) required consideration of lost ESI, availability from other sources, reasonable preservation steps, prejudice, and--depending on the remedy--intent. Defense Distributed's filing addressed those subjects and sought a supervised mechanism, including a special master, to develop the technical record. *See* Doc. 136.

Two examples illustrate the point. Appellants asserted that the supposed evidence of Larosiere's administrator status "came from nowhere in the record." Doc. 138 at 20. But Doc. 136 cited discovery responses from Elik and Lettman stating

that Larosiere had an administrative role or privileges during the relevant period, along with outside evidence bearing on administrator status. Doc. 136 at 10. Appellants likewise asserted that Defense Distributed never identified unavailable information, a preservation duty, prejudice, or intent. Doc. 138 at 17. Doc. 136 addressed those issues, identified specific ESI, referenced preservation demands, and sought a structured process to determine scope, control, and restoration. *See* Doc. 136 at 14–15. Those positions might ultimately have succeeded or failed, but they were not shown to be knowingly fabricated or vexatious.

The manner in which the court handled the issue confirms the point. Doc. 124 permitted further briefing on the Rule 37(e) issues, and Doc. 184 later refused to adjudicate the unresolved merits indirectly through Appellants' sanctions motion. Doc. 184 at 8–9. Nothing about that sequence establishes the bad faith necessary for § 1927 sanctions.

**(d) The supposed mootness misconduct was not bad faith.**

Appellants also complained that Defense Distributed "repeatedly mooted [its] own motions after forcing movants to reply." Doc. 138 at 3, 14. But the underlying filings show a genuine procedural position about the timing of Defense Distributed's Rule 12 motions. Defense Distributed explained that the original motion preceded its original answer and that amendment of the complaint had reset

the pleading sequence, making the later motion timely in its view. *See* Doc. 48 at 16 n.1.

The district court ultimately treated the motions as moot, but an unsuccessful procedural position is not synonymous with bad faith. Appellants identified no authority or record showing that counsel filed the motions knowing they were improper or for the purpose of generating needless proceedings. The district court therefore correctly rejected this complaint as a basis for sanctions. See Doc. 184 at 5 n.5.

**(e) The conferral arguments are wrong.**

The conferral complaint likewise establishes no bad faith. The challenged short-form filing sought a briefing schedule and hearing concerning Rule 37(e); it did not itself request sanctions. Doc. 122. Before filing, Defense Distributed circulated the draft and sought Appellants' position. *See* Doc. 138 at 13; Doc. 138-4.

The transcript further shows counsel explaining that the immediate request was for full briefing and an evidentiary hearing so that the Rule 37(e) issues could be developed through ordinary-length papers. Doc. 138-4 at 15–16. Conferral requires counsel to communicate the relief sought and provide the opposing side a fair opportunity to respond; it does not require counsel to persuade the opponent to agree.

The court's resulting order confirms that the proposed procedure was not some vexatious invention. Doc. 124 permitted full briefing concerning spoliation under the ordinary page limits, with all affected parties given an opportunity to respond. The procedure the court selected substantially tracked the process Defense Distributed had sought during conferral. That sequence supports the district court's conclusion that Appellants had not shown sanctionable conferral misconduct.

**(f) The Document 117 arguments are wrong.**

Appellants' default-practice complaint fares no better. The challenged Document 117 notice identified an unresolved issue potentially bearing on entry of default judgment against Celentano, exactly the sort of issue contemplated by Middle District of Florida Local Rule 1.10(c). See Doc. 117 at 1–2; Doc. 184 at 5 n.5. Defense Distributed advised the court that other parties had appeared and raised overlapping liability issues that could affect the timing of default relief.

That short notice changed no substantive right, generated no hearing, and imposed no new deadline on Appellants. It simply informed the court why immediate default judgment could raise an inconsistency concern. The district court therefore correctly found no authority or showing that this rule-contemplated filing evidenced bad faith or sanctionable multiplication. Doc. 184 at 5 n.5.

#### 4. The requisite "multiplication" has not been shown.

Section 1927 independently requires causation. "[T]here must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings," and even unreasonable conduct is not sanctionable unless it causes proceedings that otherwise would not have occurred. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Appellants failed to make that showing.

This also answers Appellants' contention that the district court somehow held that counterclaims can never multiply proceedings. It did not. A counterclaim may generate additional proceedings in an appropriate case, but § 1927 still requires identification of excess proceedings caused by sanctionable conduct. Here, one amendment followed Plaintiff's amendment by agreement, Doc. 184 at 5 n.6; the Rule 41 dismissal ended the counterclaim proceedings; the noticed depositions never occurred; the relevant motion to compel was never adjudicated; the short-form Rule 37(e) motion led to ordinary briefing authorized by the court; the Rule 12 overlap reflected disputed pleading procedure; and the Document 117 notice generated no additional adjudicative proceeding. Appellants identified no incremental proceeding attributable to conduct the court was required to find unreasonable and vexatious.

The district court therefore did not need to announce any categorical rule about counterclaims. Section 1927 required actual multiplication caused by sanctionable conduct, and the record did not establish it. *See* Doc. 184 at 3, 5–9.

**5. Appellants did not establish the required fee nexus.**

Section 1927 permits only "excess costs, expenses, and attorneys' fees reasonably incurred because of" the sanctionable conduct. 28 U.S.C. § 1927. Thus, even a finding of objectionable conduct would not authorize a generalized award for defending the litigation; the requested fees must bear a causal nexus to proceedings improperly multiplied. Peterson, 124 F.3d at 1396.

Appellants did not identify a compensable set of excess proceedings attributable to the conduct they challenged. Their theories instead treated the defense of the counterclaims, ordinary discovery, and related motion practice as one undifferentiated injury. Because the motion failed to establish both sanctionable multiplication and the resulting excess proceedings, it supplied no permissible basis for a § 1927 fee award.

**6. Local Rule 3.01(h) barred incorporation by reference.**

The district court also correctly refused Appellants' effort to incorporate wholesale the arguments from their motion to dismiss. Doc. 138 at 5. Middle District of Florida Local Rule 3.01(h) prohibited incorporation by reference, and the

sanctions motion could not evade its own page and briefing requirements by importing another motion's merits arguments. Doc. 184 at 7 n.7.

Appellants' appellate attempt to recast Doc. 71 solely as "notice" changes nothing. Used for that limited purpose, Doc. 71 establishes only that Appellants told Defense Distributed they believed the counterclaims defective. It does not establish that those contentions were correct, that counsel knew them to be correct, or that later litigation conduct was frivolous. Used for anything more, Appellants return to the incorporated merits arguments the district court properly declined to consider. Either way, Doc. 71 supplies no basis for reversal.

### C. The higher bar of inherent authority was not satisfied either.

The district court also correctly denied sanctions under its inherent power. That power reaches a broader range of litigation conduct than § 1927, but it is correspondingly constrained by a demanding bad-faith requirement. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 46 (1991). In the Eleventh Circuit, the movant must establish subjective bad faith either directly or through conduct so egregious that it could only have been committed in bad faith; recklessness alone is insufficient. *See Hyde* v. Irish, 962 F.3d 1306, 1310 (11th Cir. 2020).

Appellants are therefore correct only at a high level when they posit that inherent authority can reach misconduct that falls outside § 1927's strict multiplication requirement. *Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010), itself illustrates that distinction: the absence of post-filing multiplication defeated § 1927, but inherent authority remained potentially available for a knowingly baseless filing that otherwise could have escaped Rule 11. *Id.* at 1314-16. What Appellants omit is the dispositive requirement that remained: actual bad faith. The breadth of inherent authority does not permit a court to infer that predicate merely because § 1927 does not reach particular conduct.

Nothing in this record required a finding of subjective bad faith. The counterclaims contained substantial factual detail; their disputed allegations were never adjudicated as knowingly false; the Rule 41 dismissal was procedurally authorized; the discovery allegations rested on an incomplete record; the spoliation issues remained unresolved; and the miscellaneous procedural complaints involved ordinary litigation positions rather than defiance of court orders. The fact that independent counsel later refiled substantially similar claims in another court further undercuts the assertion that the claims here could only have reflected subjective bad faith.

Appellants' reliance (at 29–30) on Defense Distributed's public rhetoric does not cure that defect. They point to a newsletter describing the litigation in aggressive terms and characterizing it as an instrument for discovering identities and information within the 3D-printing community. Even accepting that characterization, publicizing litigation or speaking aggressively about its potential consequences does not establish that Defense Distributed or its counsel knew the pleaded claims were baseless, used the judicial process dishonestly, or pursued proceedings solely for an illegitimate end. At most, the evidence supports an inference that Defense Distributed expected public attention and discovery to have consequences beyond the docket. That is not the subjective bad faith *Hyde* requires.

The same is true of Appellants' other examples. The hacking allegation was supported by Gingras's sworn account of his contemporaneous belief and the information provided to him; the spoliation filing cited record evidence and sought further development; and the conferral record shows counsel seeking structured briefing rather than concealing the relief requested.

The district court therefore properly denied inherent-power sanctions. Its rejection of § 1927 relief rested in substantial part on the absence of qualifying bad faith, and the inherent-power theory required an even more specific showing of subjective bad faith. Doc. 184 at 3–9. *Peer* preserves inherent authority for genuine

gaps in other sanctions mechanisms; it does not turn that authority into a catch-all for litigation conduct that failed the governing bad-faith standard.

**D. The subsequent fee denial accords with the decision below.**

The Southern District's subsequent fee denial reinforces the decision below. In the refiled action, four Appellants sought attorneys' fees on overlapping theories that the claims lacked merit and that the litigation had been pursued improperly. Their motion expressly invoked the earlier dismissal and refiling as evidence of improper motivation. Defs.' Fee Mot. at 1–2, 9, *Defense Distributed v. Elik*, No. 9:25-cv-81197-DMM (S.D. Fla. Aug. 31, 2026), ECF No. 196.

The Southern District denied that request after considering the totality of the circumstances. It found that the manner of litigation did not meaningfully distinguish the case from other hard-fought civil actions and that the Lanham Act claim was not so exceptionally meritless as to warrant fee shifting. Order at 3–4, *Defense Distributed v. Elik*, No. 9:25-cv-81197-DMM (S.D. Fla. entered Sept. 18, 2026), ECF No. 201. That ruling applies a different fee provision, but its treatment of the refiled litigation accords with the decision here. The district court below found that voluntary dismissal and refiling did not demonstrate bad faith. Doc. 184 at 6 n.7. The court that adjudicated the refiled claims likewise rejected the effort to convert their asserted weakness and contentious prosecution into a fee award.

## Conclusion

The Court should either (1) dismiss the appeal as mooted by the [redacted] or (2) affirm.

Respectfully submitted,
/s/ Charles Flores
Charles Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed,
Charles Flores, and Andino Reynal

## Certificate of Compliance

This filing complies with the type-volume limitations of the Federal Rules of Appellate Procedure because it contains no more than 9,585 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally spaced typeface in 14-point font using Microsoft Word for Mac Version 16.109.3.

/s/ Charles Flores
Charles Flores