**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**Defense Distributed, et. al,**

**Plaintiffs-Appellees,**

**v.**

**No. 26-11420-DD**

**John Elik, Alexander Holladay, Josh Stroke, John Lettman, and MAF Corp.,**

**Defendants-Appellants.**

---

**APPEAL OF A CIVIL CASE FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA DISTRICT COURT CASE NO. 6:24-CV-01629-AGM-LHP**

---

# REDACTED REPLY BRIEF OF APPELLANTS

---

Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
Zermay Law, P.A.
3000 Coral Way Ste 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Tel: (305) 767-3529

Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

# TABLE OF CONTENTS


**TABLE OF CONTENTS** ........ 1

**TABLE OF AUTHORITIES** ........ 3

**INTRODUCTION** ........ 5

**ARGUMENT** ........ 7

**I. THE RESPONSE DOES NOT JUSTIFY REJECTING THE EVIDENTIARY PROFFER WITHOUT FURTHER PROCEEDINGS.** ........ 7

- **a. The order substituted the absence of prior rulings for examination of the evidence** ........ 8
- **b. The requested hearing would have developed the facts needed to evaluate counsel's conduct.** ........ 10
- **c. The separate inherent-authority ground required its own application to the evidence.** ........ 13

**II. APPELLEES DO NOT ANSWER THE EVIDENCE OF UNSUPPORTED CLAIMS PERSISTENTLY PURSUED AT APPELLANTS' EXPENSE.** ........ 16

- **a. Appellees' asserted "factual detail" consisted of collective, shotgun accusations without the necessary factual connections.** ........ 17
- **b. The proven notice and persistence thereafter were relevant to counsel's knowledge and the additional work imposed.** ........ 19
- **c. Discovery tested the accusations' foundations and produced further work.** ........ 22
- **d. The spoliation proceedings likewise required examination of their factual foundation and resulting expense.** ........ 24

**III. THE SOUTHERN DISTRICT PROCEEDINGS DO NOT VALIDATE THE CONDUCT CHALLENGED HERE.** ........ 28

**IV. LAROSIERE'S PERSONAL SETTLEMENT OBVIOUSLY COULD NOT RELEASE APPELLANTS' INDEPENDENT RIGHTS.** .......... 30

**V. APPELLANTS PRESERVED REVIEW OF THE DENIAL ALREADY ENTERED.** .......... 35

**CONCLUSION** .......... 37

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)** .......... 38

**CERTIFICATE OF SERVICE** .......... 39

# TABLE OF AUTHORITIES

**Cases**

*Addington v. Farmer's Elevator Mutual Insurance Co.*, 650 F.2d 663 (5th Cir. Unit A July 1981) .......... 36

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2007) .......... 14

*Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991) .......... 23

*Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989) .......... 36

*Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021) .......... 18

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) .......... 20

*Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) .......... 20

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025) .......... 9, 27

*Defense Distributed v. Elik*, No. 9:25-cv-81197 (S.D. Fla. July 1, 2026) .......... 28

*DeJour v. Coral Springs KGB, Inc.*, 293 So. 3d 502 (Fla. 4th DCA 2020) .......... 33

*Didie v. Howes*, 988 F.2d 1097 (11th Cir. 1993) .......... 6, 13

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) (en banc) .......... 13

*Footman v. Cheung*, 139 F. App'x 144 (11th Cir. 2005) .......... 20

*Gibson v. Dooly State Prison Warden*, No. 24-10125 (11th Cir. Jan. 23, 2025) .......... 36

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) .......... 27

*Hyde v. Irish*, 962 F.3d 1306 (11th Cir. 2020) .......... 5, 8

*Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962) ................................32

*Local No. 93, International Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986).....................................................................33

*McDonough v. City of Homestead*, No. 17-23227 (S.D. Fla. Sept. 25, 2018)..........................................................20

*Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483 (11th Cir. 1994).................................................................34

*Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010) .......................23

*Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010) ..........................6, 8, 14, 15

*Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991) ...............................10

*Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254 (11th Cir. 2015).......36

*RES-GA Cobblestone, LLC v. Blake Construction & Development, LLC*, 718 F.3d 1308 (11th Cir. 2013)..........................................................34

*Steinert v. Winn Group, Inc.*, 440 F.3d 1214 (10th Cir. 2006)..........15, 30

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015)..................................................................18

## INTRODUCTION

Appellees defend the lower court principally by invoking the absence of merits and discovery rulings that their litigation conduct prevented. Yet sanctions under § 1927 and inherent authority "do not require a court to rule on the merits of the underlying case." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). The question was whether counsel's conduct warranted sanctions on the evidence presented. After identifying the lack of merits and discovery rulings by the court, the order stated "**Thus**, the motion rests on pure conjecture." Doc. 184 at 5–7.[1] (emphasis added), denying relief without either engaging with the record evidence identified in the motion, and without the requested evidentiary hearing.

Appellants supplied evidence contradicting counsel's explanations for pursuing the counterclaims. Prefiling communications from Attorney Gingras acknowledged that the alleged incident had not satisfied the CFAA's loss threshold and expressed his assumption that Larosiere was uninvolved. Yet he later signed a pleading alleging a CFAA violation and Larosiere's participation. Discovery seeking the accusations' factual bases produced evasive responses that failed to substantiate them, while

[1] "Doc." refers to entries on the Middle District of Florida docket; accompanying page references identify pages within the cited document.

Flores demanded spoliation proceedings without identifying a request for the supposedly missing communications. The court rejected this showing without so much as addressing those contradictions. A hearing could supply the factual development "necessary for an informed and reasoned decision." *Didie v. Howes*, 988 F.2d 1097, 1105 (11th Cir. 1993).

Appellees argue that the record did not compel a finding of bad faith. AB 40. But Appellants need not establish that sanctions were the only permissible outcome to obtain remand for application of the correct standards and consideration of the evidence. In *Peer*, this Court remanded "[i]n deference to the district court's discretion." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010). Appellants seek the same opportunity for the district court to rule after examining the evidence, rather than presuming conjecture based on a lack of rulings.

Appellees' settlement and forfeiture arguments supply no basis for affirmance. Appellants timely challenged the sanctions denial, and Appellees identify no authorization by which Larosiere's personal settlement could possibly extinguish the Appellants' independent rights. The Court should vacate the denial and remand for the requested evidentiary proceedings and reconsideration under the correct standards.

# ARGUMENT

## I. THE RESPONSE DOES NOT JUSTIFY REJECTING THE EVIDENTIARY PROFFER WITHOUT FURTHER PROCEEDINGS.

Appellees defend an order that relied on the absence of earlier merits and discovery rulings while leaving the sanctions evidence unexamined. The motion identified concrete contradictions concerning counsel's knowledge and conduct; the requested hearing would have developed the unresolved facts. Remand would permit the court to evaluate that evidence, determine each respondent's responsibility, and separately apply § 1927 and inherent authority.

The order should be vacated and remanded for an evidentiary hearing. The magistrate judge denied sanctions because Appellants supposedly lacked adjudicated proof, citing a lack of ruling on the counterclaims, discovery disputes, and the alleged spoliation issues. But those were reasons to hold the requested evidentiary hearing, not reasons to deny the motion as "pure conjecture." Appellants submitted a record proffer showing Appellee's counsel, on an individual level, had knowledge of the lack of factual basis to their litigation positions, failed to conduct a reasonable pre-suit inquiry, and were attempting intentionally to increase the cost and complexity of the underlying litigation. Yet when

Appellants sought sanctions based on counsel's use of those allegations to multiply proceedings, the magistrate judge denied relief without addressing the hearing request.

A district court abuses discretion when it applies the wrong legal standard, follows improper procedures, or bases its decision on clearly erroneous fact findings. *Peer*, 606 F.3d at 1311. Each occurred here.

**a. The order substituted the absence of prior rulings for examination of the evidence**

Appellees insist the order merely found the evidence insufficient and imposed no categorical prerequisites. AB 25–27, 32. The order's reasoning says otherwise. It explained that the counterclaims' merits had never been addressed, then relied on the absence of any discovery ruling to conclude: "**Thus**, the motion rests on pure conjecture." Doc. 184 at 5–7 (emphasis added). Its footnote distinguished Appellants' authorities because substantive rulings had occurred in those cases. *Id*. at 7 n.7.

As the principal brief explained, *Hyde* forecloses requiring a prior merits ruling before adjudicating sanctions. IB 19–20. Appellees nevertheless emphasize that no court had found the allegations knowingly false. AB 40. The sanctions motion asked the court to

determine that very issue from the evidence presented. The absence of an earlier ruling supplied no reason to decline that inquiry.

*Celsius* likewise answers Appellees' reliance on the absence of a successful motion to compel. As explained at IB 21–22, just as occurred in this case, voluntary dismissal in *Celsius* mooted pending motions to compel, yet this Court upheld a finding of sanctionable discovery conduct. *Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, No. 22-12687, 2025 WL 2887300, at *3, *7–8 (11th Cir. Oct. 10, 2025). Rather than engage with the portion of the opinion actually referenced by Appellants, Appellees chose to discuss only *Celsius*'s procedural protections for attorneys facing sanctions, AB 26, but never explain why discovery misconduct could be examined there after dismissal while the absence of a discovery ruling supposedly made Appellants' evidence conjectural here.

Appellees describe their conduct as ordinary litigation, but their pleadings accused the counterdefendants of RICO and invoked Brian Thompson's killing, while their discovery responses failed to substantiate the accusations challenged in the sanctions motion. Doc. 52 at 4–5, 36–37, 61; Doc. 138 at 6–12. Whether counsel had a reasonable basis for

pursuing those accusations required examination of that evidence. The absence of an earlier adjudication did not supply the answer.

**b. The requested hearing would have developed the facts needed to evaluate counsel's conduct.**

The sanctions motion challenged counsel's repeated pursuit of the counterclaims as a whole. This Court has cautioned: "Particularly with regard to civil RICO claims, plaintiffs must stop and think before filing them." *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991). Here, counsel repeatedly accused every counterdefendant of racketeering without identifying facts connecting each person to the supposed criminal acts. The pleading invoked threatened murder and obstruction of justice, yet discovery seeking the accusations' factual bases produced evasive responses that failed to substantiate them. Doc. 52 at 36–37, 42–44, 58–62; Doc. 138 at 6–12. That record squarely challenged whether counsel had investigated before pleading and whether they knowingly or recklessly continued claims they could not support. The requested hearing would have permitted examination of those questions across the counterclaims and the lawyers responsible for pursuing them.

The hacking accusation illustrates why counsel's assurances required examination. Gingras signed a pleading accusing Lettman of

hacking his website with Larosiere's and Elik's approval. Doc. 29 at 19; Doc. 52 at 38. His own declaration described a public comment form that accepted names and email addresses without authentication. Doc. 141-1 ¶¶ 10–18. His contemporaneous email acknowledged that the incident was "[n]ot yet" a CFAA violation because the statutory loss threshold had not been met and expressed his assumption that Larosiere was uninvolved. *Id*. at 21–22. The court needed to examine what information supported the contrary allegations Gingras subsequently signed.

Gingras relied on distorted text and profile images in the comments as indications of unauthorized access. Lettman's declaration explained how ordinary use of the public comment form could produce those appearances: Ordinary text characters created the distorted text, and the website retrieved profile images using the email address entered by the commenter. Doc. 150 at 3–5; Doc. 150-1 ¶¶ 7–44. As Gingras himself recognized, those features could not reasonably establish that anyone had gained unauthorized access to the website.

Gingras also justified his inference of Larosiere's involvement by pointing to a video showing Larosiere "laughing hysterically about all this." Doc. 141-1 ¶ 28. But the video postdated the pleading. Doc. 150 at

5. Martin's declaration further explained that the participants were mocking the claim that the displayed comment constituted evidence of hacking. Doc. 150-2 ¶¶ 13–18. Neither the timing nor Gingras's asserted context could possibly support treating a video of a man laughing at his pleading as an investigation underlying the original accusation.

Appellants expressly requested an evidentiary hearing. Doc. 138-9. At that hearing, counsel could be examined about the factual basis available when they signed or continued to defend the counterclaims, and why they maintained the accusations after receiving specific notice of their defects. Reynal could be examined about the deficient discovery responses that prevented Appellants from obtaining those factual bases. Flores could be examined about his insistence on further spoliation proceedings without identifying the allegedly unavailable communications or adequately investigating their availability. See Doc. 138 at 14–16; Doc. 138-4 at 19–20, 26–29. The existing evidence identified concrete questions about each lawyer's conduct; testimony would have permitted the court to develop the remaining facts and assess the competing explanations.

Appellees attempt to distinguish *Didie* by arguing that the order here supplied reasons for denying relief. AB 26–27. Those reasons, however, relied on the absence of earlier merits and discovery rulings while leaving the material evidence of counsel's conduct unresolved. *Didie* explains that an evidentiary hearing permits the court to "ascertain the relevant facts for the purpose of ruling." 988 F.2d at 1105. Although that case arose under Rule 11, the same need for factual development was present here. The order's reliance on missing prior rulings did not resolve the contradictions identified in the sanctions briefing or explain why the requested hearing was unnecessary.

*Donaldson*'s recognition that hearings are not universally required does not answer that problem. *See Donaldson v. Clark*, 819 F.2d 1551, 1560–61 (11th Cir. 1987) (en banc). Appellants identified material evidence and specific unresolved questions. Characterizing the resulting dispute as conjectural did not make further inquiry unnecessary.

#### c. The separate inherent-authority ground required its own application to the evidence.

Appellees correctly observe that § 1927 does not authorize sanctions against Defense Distributed as a represented party. AB 28. That

limitation does not dispose of the statutory request against counsel or the separate inherent-authority request.

Under § 1927, "objectively reckless conduct is enough to warrant sanctions," subject to the requirements of multiplication and causation. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007). Inherent authority requires subjective bad faith, which may be established directly or inferred from sufficiently egregious conduct. *Hyde*, 962 F.3d at 1310. The evidence concerning known falsity therefore required attention under both standards.

*Peer* required separate consideration of inherent-authority sanctions even though the challenged conduct did not satisfy § 1927's multiplication requirement. It affirmed denial under § 1927 because the attorney's conduct did not satisfy the multiplication requirement, but separately reversed the denial of inherent-authority sanctions concerning a knowingly baseless filing. 606 F.3d at 1314–16. Appellees acknowledge that distinction, AB 40, but again answer that the allegations were detailed and never adjudicated knowingly false. Neither assertion resolves the evidence presented bearing on counsel's knowledge.

Appellees' invocation of Rule 11's procedures does not answer the sanctions grounds actually presented. AB 29. Rule 11, § 1927, and inherent authority can address overlapping misconduct, subject to their respective requirements. *Peer*, 606 F.3d at 1314–16. Appellants sought relief under § 1927 and inherent authority. The availability of a Rule 11 motion did not displace those grounds, and Rule 11's separate-motion and safe-harbor provisions do not become additional prerequisites to § 1927 relief. *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006).

As explained at IB 30, Appellee's principal Cody Wilson publicly promoted the counterclaims as a means of using a federal court to uncover identities throughout the broader 3D-printing community. Doc. 53 at 5–6. That stated objective supported Appellants' contention that the unsupported accusations were being used to obtain discovery and exert pressure beyond any legitimate need to prove the pleaded claims. Appellees dismiss the statement as aggressive rhetoric, AB 41, but its relevance was evidentiary: Wilson described what he intended the litigation to accomplish. The order did not address that evidence of purpose when rejecting the request for inherent-authority sanctions.

The motion's theories also concerned different actors. Gingras's own knowledge was central to the hacking accusation. Reynal's handling of discovery responses and Flores's conduct during conferral implicated their subsequent litigation decisions. *See* Doc. 138 at 14–16; Doc. 138-4. Remand would permit findings about each respondent's conduct and the applicable source of authority.

## II. APPELLEES DO NOT ANSWER THE EVIDENCE OF UNSUPPORTED CLAIMS PERSISTENTLY PURSUED AT APPELLANTS' EXPENSE.

Appellees' invocation of "factual detail" does not answer the motion's showing that counsel repeatedly accused every counterdefendant of grave misconduct without supplying—or even investigating—the facts necessary to support each defendant's liability. Specific warnings failed to cure those defects, and discovery seeking substantiation produced deficient responses followed by dismissal when Elik moved to compel. By the time of dismissal, Appellants had already incurred the expense of responding to the repeated pleadings and spoliation accusations.

**a. Appellees' asserted "factual detail" consisted of collective, shotgun accusations without the necessary factual connections.**

Appellees call their counterclaims factually detailed, but rely on their own *ipse dixit* to establish that the accusations had factual support. AB 29, 40. The operative pleading repeated seven theories against the nonexistent "Gatalog" and the same six named defendants, producing forty-nine counts. Giving each defendant a separate count did not identify what that defendant supposedly did to violate the law. Repetition of the accusations supplied neither the missing factual connections nor evidence supporting them.

The CFAA counts used the same formula: each defendant was liable because of his status as a "Gatalog Principal" and independently liable for his "own CFAA violations pleaded in Part II above." Doc. 52 at 47–49, ¶¶ 178–195. That formula identified no unauthorized access attributable to the particular defendant. The trade-libel counts similarly asserted each defendant's "own trade libel" and incorporated the same narrative. *Id.* at 52–54, ¶¶ 221–238. The individual RICO counts repeated statutory language and incorporated Part II without identifying the facts establishing each defendant's violation. *Id.* at 42–44, ¶¶ 143–154.

These are the defects addressed by *Weiland*'s requirement to identify "which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). *Barmapov* likewise condemned indiscriminate incorporation of allegations without connecting them to particular claims, including criminal allegations irrelevant to the defendants against whom they were incorporated. *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021). Each counterdefendant had to defend every theory without being told which acts supposedly made him liable.

The threatened-murder allegations illustrate the problem. Under "The Gatalog Threatens Murder," the pleading attributed an unnamed sender's message to "the Gatalog" by asserting that the sender acted as its agent. It then used that supposed agency relationship to support RICO claims against the individual counterdefendants. But the message itself disclaimed placing or intending to collect the supposed bounty, yet the pleading characterized it as racketeering conduct indictable under § 1959 without identifying facts connecting these Appellants to its

authorship or authorization. Doc. 52 at 36–37, ¶¶ 121–127. Calling the sender an agent did not supply those missing connections.

The spoliation allegations similarly invoked "obstruction of justice indictable under 18 U.S.C. § 1503." *Id.* at 58, ¶ 260. The individual counts repeated liability based on being a "Gatalog Principal" and directed the reader to a nonexistent "Part IV.H.1." *Id.* at 60–62, ¶¶ 272–288. The counts against Larosiere and Elik expressly incorporated paragraph 3's allegations inexplicably invoking the shooting death of UnitedHealth CEO Brian Thompson, without explaining how that killing established either person's liability for the loss of evidence relevant to this civil dispute. *Id.* at 4–5, 61. Accusations of grave criminal conduct made the missing factual foundations particularly consequential.

**b. The proven notice and persistence thereafter were relevant to counsel's knowledge and the additional work imposed.**

Appellees answer that a motion to dismiss establishes only an adversary's contentions, not their correctness. AB 30, 39. Appellants agree that notice alone does not establish sanctionability. The sanctions theory combined notice with the pleadings themselves and evidence challenging the factual foundation for their continued pursuit.

Doc. 47 identified the original counterclaims' factual and legal defects. Counsel nevertheless repeated the challenged allegations in Docs. 49 and 52, requiring another dismissal motion in Doc. 71. As explained at IB 28–30, that sequence bore directly on counsel's knowledge and the additional work their decisions imposed. The order observed that amendment followed an amendment to the complaint by agreement. Doc. 184 at 5 n.6. But consent to file an amended pleading did not excuse counsel's decision to repeat allegations whose identified factual and legal defects remained uncured.

*Byrne* addressed that distinction when counsel repleaded baseless allegations, "forcing the defendants to respond to the same claims a second time." *Byrne v. Nezhat*, 261 F.3d 1075, 1116–17 (11th Cir. 2001) (abrogated in part on other grounds by *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)); *see also Footman v. Cheung*, 139 F. App'x 144, 146 (11th Cir. 2005); *McDonough v. City of Homestead*, No. 17-23227, Doc. 119 at 14–16 (S.D. Fla. Sept. 25, 2018). The inquiry concerns what counsel knew when repeating the allegations and what additional proceedings their repetition caused. Thus, even if the initial

counterclaims fell outside § 1927 (they do not), their subsequent maintenance and repleading remained subject to its requirements.

Appellees' incorporation-by-reference argument does not eliminate that inquiry. Their own brief refers to prior filings and attachments to establish what was alleged or presented. AB 29, 33–34. Appellants likewise could identify a prior filing as evidence of their notice of the pleadings' myriad defects without importing the cited motion's entire legal argument. Local Rule 3.01(h) did not make Doc. 71 inadmissible as evidence of what counsel had been told. To be sure, the motion for sanctions was not incorporating the legal arguments in the motions to dismiss, as the two motions sought entirely different relief.

Even accepting a restriction on incorporating the dismissal arguments, the sanctions motion itself explained why the discovery materials failed to substantiate important accusations. Doc. 138 at 6–12, 14–22. Its authorized reply separately addressed Gingras's evidence. Doc. 150 at 3–5. Appellees' proposed choice—either Doc. 71 conclusively proves frivolousness or it has no relevance—disregards its role alongside that independent evidentiary showing.

**c. Discovery tested the accusations' foundations and produced further work.**

Appellants did more than challenge the pleading. They requested the factual bases for the accusations in discovery. Asked for evidence that Elik directed or solicited hacking, Defense Distributed produced screenshots showing a "woah" comment and a retweet. Doc. 138 at 10. Those materials did not substantiate direction or solicitation of hacking. The export-control responses revealed a similar problem. Defense Distributed denied that it had failed to consult the State Department about whether the allegedly published material was ITAR-controlled. When asked to produce those communications, it supplied 49 pages of regulatory material and no communication with State. Doc. 138 at 6–7. The sanctions motion identified that specific inconsistency as evidence warranting examination of counsel's claimed investigation.

When Elik sought complete interrogatory answers, Reynal responded by asserting that Appellants' own discovery responses were deficient. He declined to identify those supposed deficiencies, both before and during conferral. Shortly afterward, he invoked concerns about those same responses to seek appointment of a special master. Doc. 138 at 15–16; Doc. 138-4 at 5–6. The motion challenged counsel's use of unexplained

accusations to demand additional proceedings while leaving requests for the counterclaims' factual bases inadequately answered.

As IB 20–22 and 27–28 explained, Elik moved to compel complete interrogatory responses on September 4, 2025. Doc. 121. Defense Distributed dismissed its counterclaims the next day. Doc. 123. The resulting absence of adjudication did not substantiate the claims or erase the work required to seek their factual bases.

Appellees defend their right to dismiss under Rule 41. AB 31–32. The availability of dismissal does not answer whether counsel had already imposed unnecessary expense by continuing claims they knew, or recklessly disregarded, were unsupported. The sanctions motion challenged that earlier persistence and the proceedings it caused. *Norelus* recognizes that when discoverable evidence will not support a claim, the litigant and attorney have "a duty to discontinue their quest." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1287 (11th Cir. 2010) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). The chronology and deficient responses warranted inquiry into whether counsel had already crossed that line.

**d. The spoliation proceedings likewise required examination of their factual foundation and resulting expense.**

Appellees rely on their own allegations of deleted messages in an internet chat log to defend their pursuit of spoliation proceedings. AB 33–36. Those references did not establish which relevant communications were actually unavailable or why they could not be obtained from another source. Counsel's failure to identify a request seeking the supposedly missing communications, coupled with the failure and refusal to seek any clarification, directly undermined the asserted need for further proceedings under Rule 37(e).

Defense Distributed had alleged spoliation in its first counterclaim. Doc. 29 at 92. Months later, Mr. Flores still could not identify a discovery request seeking the communications he claimed were missing. He instead asserted that the material had been requested and added: "And if they weren't, you can oppose on that ground. **It's fine. I just want to be able to brief it and have a hearing.**" Doc. 138-4 at 20 (emphasis added). When asked whether he had sought any clarification, he answered: "I haven't. We issued interrogatories that make the matter pretty clear." *Id.* at 26. The fact that interrogatories do not request

materials aside, even asking about deletion could not possibly establish that the underlying communications could not be obtained.

Counsel also failed to explain the evidence supporting the asserted loss, or even what they were seeking. The material produced in discovery—an unsigned text file asserting that 26,000 messages were deleted—had nothing to do with the proposed motion asserting that 71,000 had been deleted. Asked to explain the discrepancy and identify who prepared the supporting material, Flores asserted that he had "conferral fatigue," ending the discussion and refusing to provide an answer. *Id*. at 28–29. These were basic questions about whether relevant evidence had been lost, raised before Appellants were required to incur the expense of another round of briefing.

Appellants' evidence therefore concerned counsel's willingness to force briefing before clarifying whether a factual basis for relief existed. The court's authorization of ordinary-length briefing did not answer that concern. Indeed, Doc. 124 denied the initial short-form motion because it failed clearly to identify the targets or requested sanctions. Permission to file a more complete motion did not validate the accusations.

The remaining spoliation dispute involving Larosiere—which Appellants note went nowhere and uncovered nothing[2]—did not answer whether counsel had already imposed unnecessary expense on these Appellants. The court could examine that completed conduct separately. If findings in the remaining dispute were necessary, it could defer the affected portion of the sanctions request or develop the facts at the requested hearing. Neither possibility justified treating the evidence already presented as conjecture.

Appellees also narrow multiplication to hearings or depositions that actually occurred. AB 32, 37–38. But repeated dismissal briefing, efforts to obtain adequate discovery responses, the motion to compel, and responses required by the spoliation proceedings were identifiable work. Cancellation of a proposed proceeding does not erase preparation actually performed. Recovery must, of course, be limited to proven expenses

[2] The renewed spoliation motion, asserted against Larosiere, which repeated the same allegations in the motion against all Counterdefendants, culminated in a hearing which was cancelled mere minutes into the hearing because Appellees had refused to provide any of the materials supposedly underlying their motion to opposing counsel ahead of the hearing. Doc. 209 (Feb. 11, 2026).

caused by sanctionable conduct and incurred by the Appellants seeking them.

The motion requested a determination of entitlement followed by sworn fee submissions. Doc. 138 at 23–24. The court therefore did not need to calculate an award before deciding whether the proffer warranted further proceedings. *Goodyear* requires compensatory sanctions to reflect expenses caused by the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–10 (2017). *Celsius* likewise distinguished the finding of sanctionable discovery conduct from the proper calculation of resulting fees. 2025 WL 2887300, at *8–9. Those requirements support careful allocation on remand.

The response's treatment of the remaining procedural incidents does not dispose of these grounds. Even if the default notice or overlapping Rule 12 filings independently justified no award, the court still had to assess the pleaded accusations and discovery conduct against the specific evidence concerning them. Their later refiling did not supply the missing substantiation.

## III. THE SOUTHERN DISTRICT PROCEEDINGS DO NOT VALIDATE THE CONDUCT CHALLENGED HERE.

Appellees argue that new counsel's refiling of substantially similar claims undermines any inference of bad faith. AB 40. Not so. The subsequent, narrowed action retained a RICO theory but omitted the separate CFAA, trade-libel, FDUTPA, and spoliation claims pursued here. *Compare* Doc. 52 at 40–62 with *Defense Distributed v. Elik*, No. 9:25-cv-81197, DE 179 at 2 (S.D. Fla. July 1, 2026). Another lawyer's decision to pursue a reduced case does not establish the factual basis for the abandoned claims or excuse the earlier lawyers' conduct.

The outcome of the additional case also defeats the suggestion that refiling vindicated the accusations. The narrowed action ended in summary judgment because essential proof was missing. The court found no evidence that Defendants sought to obtain Plaintiffs' money or property through deception and concluded: "Without evidence of a qualifying predicate act, Plaintiffs cannot establish a RICO violation." *Id.* at 5. The last-minute declaration Plaintiffs provided there did not connect any Defendant's conduct to a lost transaction, and the remaining evidence did not supply the necessary causation. *Id.* at 6–8. Plaintiffs had also published the supposedly harmful meme—which was also the basis

of the RICO counterclaims here—themselves, preventing them from attributing its alleged effects to Defendants. *Id.* at 10.

The expert testimony underscores why refiling supplied no vindication. Asked what materials supported his conclusion that Defendants' conduct inflicted economic harm on Plaintiffs, Tyra answered: "None. I did not review any material regarding that particular statement." Asked whether he made it up, he responded: "yeah, I made it up." *Elik*, DE 147-7 at 68. Appellees' reliance on the later action therefore points to another proceeding in which the asserted connection between Defendants' conduct and Plaintiffs' losses lacked evidentiary support.

These later proceedings answer Appellees' reliance on refiling. The error in the appealed denial remains grounded in the evidence presented below and the court's treatment of that evidence.

The later denial of fees under § 1117(a), invoked at AB 42, does not supply an alternative adjudication of this motion. That order, presently on appeal to this Court, concerned whether the narrowed Southern District action was exceptional under the Lanham Act. It did not determine whether the lawyers who litigated the earlier counterclaims

knowingly or recklessly multiplied proceedings in the Middle District. The earlier motion also challenged causes of action and conduct outside the narrowed case.

Different fee mechanisms require attention to their different subjects and standards. *See Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221–22 (10th Cir. 2006) (rejecting the contention that denial under other fee provisions foreclosed § 1927 relief). The § 1117(a) denial is itself on appeal. Its existence does not answer the preserved challenge to the treatment of the earlier, counsel-specific evidentiary proffer.

## IV. LAROSIERE'S PERSONAL SETTLEMENT OBVIOUSLY COULD NOT RELEASE APPELLANTS' INDEPENDENT RIGHTS.

Appellees spend most of their brief asking this Court to treat a lawyer's personal release as an authorized settlement for the rights of clients no longer in the suit, without identifying any authorization from those clients. AB 3–19. Their interpretation would permit Larosiere to surrender rights he did not own merely because he, at one point, represented their owners. Neither the agreement's definitions nor the fact of representation establishes that power.

[redacted] Appellants are not among them. [redacted] The breadth of the listed subjects does not transfer ownership of Appellants' rights to Larosiere. Even a claim related to the settled litigation must belong to a person whose rights the agreement validly releases. MSA Ex. A, [redacted]

The joint sanctions motion sought compensation for expenses incurred by separate movants defending claims asserted against each of them. Doc. 138 at 23–24. Their representation was also separate: Zermay represented Larosiere; Larosiere represented Elik, Stroke, and Lettman; and De Pury represented Holladay and MAF. *Id.* at 24–25. Larosiere's request concerning the expense of Zermay's representation did not encompass the other movants' expenses for their own counsel. Joining those requests in one motion could not transfer ownership of one movant's rights to another. Larosiere is not an appellant, and this appeal seeks no recovery for his released interest.

Appellees characterize Appellants' rights as derivative of Larosiere's right because the parties sought sanctions in a joint motion. AB 12–13. But each Appellant seeks compensation for expenses incurred defending claims against that Appellant. None seeks to enforce a claim acquired from Larosiere. Their rights arose from the proceedings imposed on them and remain independent of his right to recover his own expenses.

The remaining provisions confirm that distinction. [redacted] None identifies Appellants' independent sanctions claims as property Larosiere could surrender, and none establishes authorization from Appellants. MSA Ex. A, [redacted]

Appellees' alternative reliance on the word "[redacted]" similarly confuses procedural representation with ownership and settlement authority. *Link*'s rule that clients generally bear the consequences of their lawyer's litigation acts does not make a lawyer's personal settlement an authorized disposition of every client's independent claim. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34 (1962). Florida

law requires separate authority to compromise a client's rights. See *DeJour v. Coral Springs KGB, Inc.*, 293 So. 3d 502, 503–04 (Fla. 4th DCA 2020).

Zermay has also appeared for every Appellant in this Court. CA11 Doc. 16. Appellees' focus on Larosiere's appearance offers no explanation for extinguishing rights Appellants pursue through their other counsel as well. Their rights belong to them regardless of which authorized lawyer presents the appeal.

Appellees answer that [redacted] supplied assent for everyone included in their tortured reading of the defined releasing class. AB 14–16. That assumes the authority they must establish. The Supreme Court has explained that settling parties may not dispose of a third party's claims "without that party's agreement." *Local No. 93, International Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986). The capacity to protect nonsignatories as released beneficiaries does not establish authority to surrender other nonsignatories' independent rights.

Likewise, consideration sufficient to support the contracting parties' bargain does not establish assent or settlement authority from

Appellants. Appellees' reliance on the completed exchange answers a question about Larosiere's settlement of his own released claims, not whether he possessed power to settle these separate interests.

*RES-GA Cobblestone* involved an appellant's own postjudgment agreement and conduct resolving the sanctions he sought to appeal. *RES-GA Cobblestone, LLC v. Blake Construction & Development, LLC*, 718 F.3d 1308, 1315–17 (11th Cir. 2013). No Appellant entered a comparable agreement here. Their notice of appeal objectively asserted continued pursuit of their rights.

Finally, Appellees suggest that any lack of authority concerns only Larosiere's relationship with his clients. AB 14. This turns centuries of contract law on its head. *Murchison* rightly places the burden on the party seeking enforcement to establish counsel's "clear and unequivocal authority" to settle. *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994). Appellees identify no grant of that authority. Their affidavit's characterization of Appellants as acting derivatively supplies no facts establishing one. A tortured contractual definition cannot relieve Appellees of the burden *Murchison* imposes.

## V. APPELLANTS PRESERVED REVIEW OF THE DENIAL ALREADY ENTERED.

The original motion requested sanctions and a hearing. Docs. 138, 138-9. After denial, Appellants timely objected under Rule 72(a), challenging the governing standards, treatment of their evidence, incorporation ruling, and failure to conduct a hearing. Doc. 194 at 3–10. The final order then terminated pending motions without substantively resolving those objections. Doc. 273. IB 34–35 expressly challenged that disposition.

Appellees recast the appeal as a new demand for post-settlement proceedings that Appellants never presented below. AB 20–24. The relief requested remains review of the same denial on the same preserved grounds. A settlement by other persons did not require Appellants to recreate their sanctions motion to preserve its appellate review.

The sanctions order said that an appropriate renewed motion "may be filed" within thirty days of final judgment, "if appropriate." Doc. 184 at 9. That language permitted renewal; it did not vacate the denial, require a second motion, or condition appellate review on duplication. The separate sixty-day reopening provision likewise offered a means of seeking further district-court proceedings. It did not purport to replace

an appeal from the judgment and the interlocutory rulings it brought up for review. *See Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989).

*Reider* does not establish otherwise. There, the appellant raised an inconsistent-verdict objection below but advanced the distinct theory of an unlawful compromise verdict on appeal. *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1260–61 (11th Cir. 2015). Its discussion of reconsideration concerned an opportunity to present that missing theory. Here, the Rule 72 objection expressly presented the errors now challenged. Appellees identify no newly substituted sanctions theory.

Nor does the absence of an express ruling on the objections destroy review. In *Gibson v. Dooly State Prison Warden*, No. 24-10125, slip op. at 4–5 (11th Cir. Jan. 23, 2025), this Court considered a timely objected-to ruling despite the district court's failure expressly to resolve the objection, recognizing that rejection could be implied by final judgment. *See also Addington v. Farmer's Elevator Mutual Insurance Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981). Whether treated as an implicit rejection or a failure to perform the requested review, Doc. 273 did not erase the objection.

Having timely presented their objections to the sanctions denial, Appellants were entitled to seek review of that ruling without refiling the same motion merely because Appellees later asserted that Larosiere's settlement had extinguished their rights.

## CONCLUSION

Appellants respectfully request that the Court vacate the sanctions denial and the final order insofar as it disposed of Appellants' Rule 72 objections, and remand for consideration under the correct standards, with an evidentiary hearing to develop and resolve the material factual issues. The district court should determine each respondent's responsibility and, if sanctions are warranted, the expenses causally attributable to that respondent's conduct.

Respectfully submitted,

DATED October 12, 2026

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
Zermay Law, P.A.
3000 Coral Way Ste 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Tel: (305) 767-3529

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

The undersigned certifies, pursuant to 11th Cir. Rule 28-1, that this brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure (32)(a) because it contains 5,898 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements and type style requirements for Rule 32(a) because it has been prepared in a proportionally-based typeface with Microsoft Word 2023 in 14 point, Century Schoolbook font.

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent by CM/ECF on October 12, 2026, and notice of this filing was electronically served on all parties there registered for service.

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellants*